James V. ROMINE

v.

JO ANNE BARNHART, Commissioner
of Social Security Administration

No. 1:05 CV 637.

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 17, 2006.

Steven S. Packard, Beaumont, TX, for Plaintiff.

Gregory E. White, Dallas, TX, for Defendant.

## *MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDA-TION OF UNITED STATES MAG-ISTRATE JUDGE*

CLARK, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct, and the Report of the United States Magistrate Judge is **ADOPTED**. A Final Judgment will be entered separately, remanding this action to the Commissioner for further consideration of vocational evidence in accordance with Social Security Ruling 00–4p.

## *REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R. 1(H) for the Assignment of Duties to United States Magistrate Judges; *see also* Gen. Order 05–6.

### I. NATURE OF THE CASE

Plaintiff requests judicial review of the Commissioner of Social Security Administration's decision denying plaintiff's application for Disability Insurance Benefits and Supplemental Security Income benefits. United States district courts may review such decisions to determine whether they are supported by substantial evidence and reflect application of correct principles of law. 42 U.S.C. § 405 (2003).

### II. PROCEEDINGS

Plaintiff claims disability due to hearing impairment. Tr. 79, 83. Following initial denial of his claim, plaintiff requested a hearing before an administrative law judge (ALJ) (Tr. 46). ALJ Jack W. Raines convened an evidentiary hearing on June 8, 2004. Plaintiff was represented at the hearing by attorney Peter Lapray, Esq. Tr. 153.

ALJ Raines determined that plaintiff's hearing loss is a severe impairment that prevents him from performing any of his past relevant work. Tr. 18. However, ALJ Raines further determined that plain-

tiff retains residual functional capacity[1] (RFC) for medium work with nonexertional limitations:

> The claimant cannot be exposed to extreme cold or heat. The claimant can be subjected to very little background noise or vibration. The claimant can only communicate face to face. The claimant can have no telephone communications.

Tr. 20, Finding 6 (underscoring added). Relying on testimony from vocational expert[2] Kay Gilreath (Tr. 165–168), ALJ Raines found that plaintiff can make a successful adjustment to alternative work that exists in significant numbers in the national economy, specifically *pipe thread inspector, plumbing installer, hand packager,* and *merchandise deliverer.* Tr. 20–21. He therefore determined that plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." Tr. 21, Finding 13.

### III. Points of Error

Plaintiff asserts a single point of error: "*The Commissioner's decision is not supported by substantial evidence because:*

> *1. The vocational testimony, upon which the ALJ's decision is based, is facially unreliable as it conflicts with the DOT."*

Pl.'s Br., p. 1. Essentially, plaintiff argues that VE Gilreath's testimony does not amount to substantial evidence because

1. "Residual functional capacity (RFC) is defined as 'the most you can still do despite your limitations.'" 20 C.F.R. § 404.1545(a)(1) (2005). It has three components: physical abilities, mental abilities, and other impairments. *Id.*

2. Vocational Experts are utilized to "assess whether jobs exist for a person with the claimant's precise abilities." *Gilliam v. Califano,* 620 F.2d 691, 694 n. 1 (8th Cir.1980). VE Gilreath has sixteen years' experience as a vocational rehabilitation counselor and consultant. Tr. 42.

noise levels for jobs identified by VE Gilreath are "loud" and "moderate," and therefore exceed plaintiff's residual functional capacity for work in jobs involving only "very little background noise or vibration." Plaintiff supports this point by reference to noise-level ratings contained in the *Dictionary of Occupational Titles* (DOT).

The Commissioner responds that an administrative law judge has discretion to rely on evidence from either a vocational expert or the DOT. Further, the Commissioner cites circuit law holding that in the event of a conflict, an administrative law judge may give greater weight to expert vocational testimony. Finally, the Commissioner asserts—curiously—that "the VE provided no indication that Plaintiff exhibited any limitations that would prevent him from performing those jobs [of plumbing assembler and merchandise deliverer]." *Id.,* p. 11.

### IV. Analysis

#### A. Role of *Dictionary of Occupational Titles*

The DOT is a publication of the United States Department of Labor. It is a comprehensive listing of job titles in the United States. Detailed descriptions of requirements for each job include assessments of exertional level and reasoning ability necessary for satisfactory performance of the work.[3]

For Social Security proceedings, the Commissioner routinely takes administra-

3. The DOT was developed "in response to the demand of an expanding public employment service for standardized occupational information to support job placement activities." *Introduction* to Dictionary of Occupational Titles, 4th Ed. Rev'd. The Department of Labor's goal was to provide a "comprehensive classification of all jobs in the American economy" in order "to render scientific the process of matching unemployed (or underemployed) workers with appropriate jobs." Deborah C. Malamud, *Engineering the Middle Classes: Class Line–Drawing in New Deal*

tive notice of job information contained in DOT when determining whether work exists in significant numbers in the national economy. *Sykes v. Apfel,* 228 F.3d at 269; *Gibson v. Heckler,* 762 F.2d 1516, 1518 n. 2 (11th Cir.1985); *see* 20 C.F.R. § 404.1566(d)(1) (2005); *see also* Social Security Ruling 00–4p (2000), 2000 WL 1898704. The Commissioner also relies on the DOT "for information about the requirements of work in the national economy." Soc. Sec. R. 00–4p, 2000 WL 1898704, at *2.

### B. Conflicts Between Vocational Testimony and the DOT

■ VE Gilreath was instructed to consider hypothetically an individual with a hearing impairment that permits the individual to work only with very little background noise or vibration. Tr. 167. VE Gilreath was then asked whether jobs existed in substantial numbers that such an individual could perform. *Id.* VE Gilreath responded that such jobs do exist, and identified those listed above in Section II. Tr. 167–168.

The DOT lists those very jobs, and plaintiff correctly contends that the DOT's noise-level ratings for those jobs is greater than "very little." The jobs of *plumbing assembler,* DOT 862.684–026, and *hand packager,* DOT 920.587–018, involve noise levels characterized as "Level 4—loud" in

DOT.[4] A supplement to the DOT, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO),[5] characterizes "loud" noise intensity level as that related to "can manufacturing department; large earth-moving equipment; heavy traffic."[6] Similarly, the jobs of *pipe thread inspector,* DOT 862.381–038, and *merchandise deliverer,* DOT 299.477–010, involve noise levels characterized as "Level 3—moderate" in the DOT.[7]

Clearly, VE Gilreath's opinion that a person with plaintiff's limitations can perform the jobs above conflicts with DOT's findings as to noise levels encountered in such jobs.

### C. Conflicts: What Then?

■ The Commissioner correctly asserts that the DOT does not automatically trump a vocational expert's conflicting opinion. Regulations clearly permit administrative law judges to rely on either source of information when determining whether claimants can make adjustments to alternative available work. *See* 20 C.F.R. § 404.1566(d), (e) (2005). Moreover, in appropriate cases, an administrative law judge may give greater weight to expert vocational testimony than to findings in the DOT. *Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir.2000).[8] One obvious reason is that the DOT provides only

---

*Hours Legislation,* 96 Mich. L.Rev. 2212, 2278, 2282 (1998). Through successive revisions, the Dictionary continued to provide "a wide range of occupational information with application to job placement, occupational research, career guidance, labor-market information, curriculum development and long-range job planning." Robert A. Schaerfl, *Foreword* to DICTIONARY OF OCCUPATIONAL TITLES, 4th Ed. Rev'd.

4. *See Dictionary of Occupational Titles* §§ 862.684–026, 920.587–018 (1991), *available at* www.westlaw.com (database DICOT).

5. As well as the DOT, the Commissioner relies on its "companion publication" SCO "for information about the requirements of work in the national economy." Social Security Ruling 00–4p (2000), 2000 WL 1898704, at *2.

6. *See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,* App. D (1993), *available at* www.westlaw.com (database SCODICOT).

7. *See Dictionary of Occupational Titles* §§ 862.381–038, 299.477–010 (1991), *available at* www.westlaw.com (database DICOT).

8. In *Carey,* the conflict between vocational

*standardized* job information, whereas a vocational expert's testimony is *tailored to address a particular claimant's vocational profile and impairments,* as provided in an administrative law judge's hypothetical question.

On the other hand, an administrative law judge's discretion to choose between conflicting evidence is not unfettered. Neither regulations nor case law rank one source above the other; and each initially has equal dignity and effect. In *Carey,* the court clearly stated that neither DOT nor vocational expert opinion evidence automatically controls.[9] Therefore, to address and resolve occasional conflicts between expert vocational testimony and DOT information, the Commissioner directs that *"the adjudicator has an affirmative responsibility to ask about any possible conflict between ... VE ... evidence and information provided in the DOT."* Soc. Sec. R. 00–4p, 2000 WL 1898704, at *4. Further, the Ruling mandates:

> [B]*efore relying on VE ... evidence to support a disability determination or decision, [the ALJ] must:* **Identify and obtain a reasonable explanation for any conflicts** *... and* **Explain** *... how any conflict ... was resolved.*

*Id.,* at *1 (emphasis added).

## D. Legal Effect of Failure to Follow the Ruling

 Social Security Rulings constitute the Commissioner's internal policy and interpretations, and, therefore, lack the

force of law. See *Chrysler Corp. v. Brown,* 441 U.S. at 295–96, 99 S.Ct. 1705; *Batterton v. Francis,* 432 U.S. at 425, 97 S.Ct. 2399. Although not binding on courts, Rulings are "binding on all components of the Social Security Administration," and represent statements of policy and interpretations that have been adopted by the Administration. 20 C.F.R. § 402.35(b) (2005).

The Fifth Circuit has not issued a precedential decision as to whether an administrative law judge's disregard of this specific Ruling constitutes legal error. Other circuit courts have, however, and they generally conclude that error results when an administrative law judge fails to determine whether a vocational expert's testimony is inconsistent with the DOT, and if so, to obtain a reasonable explanation for the conflict.[10] The most recent decision—rendered just this week—is *Prochaska v. Barnhart,* 454 F.3d 731 (7th Cir.2006). There, the court succinctly observed:

> SSR 00–4p requires an ALJ who takes testimony from a vocational expert about the requirements of a particular job to determine whether that testimony is consistent with the Dictionary of Occupational Titles. The Ruling's language unambiguously sets out the ALJ's affirmative duty:
>
> > When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator **has an affirmative responsibility** to ask about any possible conflict between that VE or VS evidence and informa-

---

testimony and the DOT was only "indirect or implied," and the record otherwise reflected an adequate basis for relying on the vocational expert's testimony. *Carey,* 230 F.3d at 145–146.

**9.** In *Carey,* the Fifth Circuit embraced what it called a "middle ground" that considers neither the DOT nor VE testimony as necessarily controlling *Carey,* 230 F.3d at 147.

**10.** See *Rutherford v. Barnhart,* 399 F.3d 546, 557 (3d Cir.2005); *Hackett v. Barnhart,* 395 F.3d 1168, 1174–75 (10th Cir.2005); *Burns v. Barnhart* 312 F.3d 113, 127 (3d Cir.2002); *Bauer v. Barnhart,* 168 Fed.Appx. 719 (6th Cir.2006). *But see Watson v. Barnhart,* 126 Fed.Appx. 788, 790 (9th Cir.2005) (finding no error for failure to resolve conflicts under facts of the case).

*tion provided in the DOT. In these situations, the adjudicator will:*

*Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and*

*If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.*

*Prochaska,* at 734–35 (citing Soc. Sec. R. 00–4p) (emphasis in original). The court further quoted with approval a sister circuit's decision:

*[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point.*

*Id.,* at 735–36 (quoting *Haddock v. Apfel,* 196 F.3d 1084, 1087 (10th Cir.1999)).

While the Fifth Circuit has not weighed in specifically, it provides general guidance for reviewing district courts when they conclude that an administrative law judge has violated or disregarded a Ruling. The court instructs:

*Should an agency in its proceedings violate its rules and prejudice result, the proceedings are tainted and any actions resulting from the proceeding cannot stand.*

*Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir.1981) (citing *Pacific Molasses Co. v. Federal Trade Commission,* 356 F.2d 386, 390 (5th Cir.1966)). Thus, violation of a Ruling usually constitutes legal error, but such error warrants remand only if it results in prejudice.

### E. Discussion and Application

ALJ Raines did not perceive that VE Gilreath's testimony conflicted with the DOT. Indeed, ALJ Raines stated, *"The vocational expert testified that the information provided conforms to the Dictionary of Occupational Titles."* Tr. 20. ALJ Raines was mistaken. The hearing transcript reveals no such testimony by VE Gilreath.[11] Nor does the transcript reflect that ALJ Raines specifically asked whether her testimony conformed with the DOT.

These omissions ultimately led to a complete failure to comply with Ruling 00–4p. Because ALJ Raines was unaware of the conflict, he sensed no need to explain how he resolved the conflicts. Thus, the court must determine whether prejudice emanated from the error.

In actions for judicial review, a claimant establishes prejudice by showing that adherence to the ruling *might* have led to a different decision. *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir.2000) (citing *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1995)) (*Ripley* ultimately citing *Kane v. Heckler,* 731 F.2d 1216, 1220 (5th Cir.1984)). Here, potential prejudice is almost self-evident. Each alternative job suggested by VE Gilreath, as defined by the DOT, requires nonexertional capabilities beyond plaintiff's limitations as determined by ALJ Raines. Had ALJ Raines specifically inquired of VE Gilreath whether her opinion was consistent with the DOT, the conflict almost certainly would have been discovered.[12] VE Gilreath might well have changed her opinion in the face of that direct conflict,

---

11. VE Gilreath only recited DOT codes for jobs she identified. Tr. 167–68. She did not acknowledge, discuss, distinguish or reconcile noise level ratings for those jobs with the nonexertional hearing impairment limitations that she was asked to assume hypothetically.

12. *See Gravel v. Barnhart,* 360 F.Supp.2d 442, 451 (N.D.N.Y.2005) ("The VE's testimony would have conflicted with the DOT if the VE had gone the necessary step further and elaborated on the specific requirements of the jobs she identified vis-a-vis Gravel's RFC").

or, alternatively, ALJ Raines might have concluded that VE Gilreath could not provide a reasonable explanation for the conflict.

Second, there was unresolved ambiguity in VE Gilreath's testimony. Regarding plaintiff's ability to work as a pipe thread inspector, VE Gilreath testified:

"[I]f he was (sic) in the same room where pipes were being manufactured or cut, that would rule that out, so the job itself would fall into that hypothetical, but I can't guarantee the work setting on that particular job."

Tr. 167. Such equivocal testimony constituted a potential inconsistency in the evidence that should have been resolved under the Ruling, and might well have been determined in plaintiff's favor given that (a) plaintiff testified that he cannot separate voice from background noise,[13] and (b) ALJ Raines found "the claimant's testimony and subjective complaints are generally credible" Tr. 18.[14]

## F. Failure to Raise Conflict Issue at Administrative Hearing

■ While judicial review of the Commissioner's decision is limited and technical to a large extent, the court's overarching duty is to achieve a just determination of every action. That being the case, the foregoing analysis should not end the inquiry. The administrative transcript before the court reflects that plaintiff—although represented by licensed legal counsel—did not raise the issue regarding conflict between the DOT and vocational testimony so that ALJ Raines could recognize and explain it. The final, fundamental-fairness question, therefore, is whether plaintiff waived or forfeited his Soc. Sec. R. 00–4p argument by failing to raise it at the hearing.

In *Carey*, there was a contention that a vocational expert erroneously classified the exertional level or skills required to perform a particular job. The claimant failed to challenge the expert's classification at the administrative hearing. The Fifth Circuit acknowledged that the alleged error called into question the probative value and reliability of the expert's testimony. Nevertheless, the court did not remand the case, and its opinion made clear that:

"[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."

*Carey*, 230 F.3d at 146–147.

*Carey* was decided before the Commissioner issued Soc. Sec. R. 00–4p. However, *Carey* was followed in a later, unpublished opinion,[15] *Haas v. Barnhart*, 91 Fed.

---

13. Plaintiff testified that, when exposed to background noise, it is "extremely difficult" to "separate the voice from the noise." Tr. 161. He listed examples of background noise which causes him trouble: "air conditioning ... cars, freeway, truck passing by, airplane ... other people talking like multiple conversations going on around ... telephone ... ceiling fans." *Id.* He testified that hearing aids do not correct this impairment: "[T]hey help, but they amplify everything. In other words, they don't clarify the voice. They amplify it all, and that makes it ... very hard to work in a noisy environment." Tr. 161–162.

Plaintiff also alleged that his hearing loss causes him to work slowly and lose his balance. Tr. 163–164.

14. ALJ Raines later made a conflicting and unexplained statement that "the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision." Tr. 20, Finding 5.

15. Under Fifth Circuit Local Rule 47.5.4, unpublished opinions are not precedent except under the doctrines of *res judicata*, collateral estoppel or law of the case. Rule 47.5.4 does

Appx. 942 (5th Cir.2004), wherein the plaintiff specifically asserted that the administrative law judge violated the Ruling, but did not raise that point at the evidentiary hearing. The Fifth Circuit acknowledged that the administrative law judge provided no explanation or supporting authority for accepting vocational testimony arguably conflicting with DOT specifications, but then simply disregarded the alleged error because it had not been asserted administratively. *Id.,* at 948.

Close reading of *Carey* and *Haas* reveals that both cases involved unusual and unique factual circumstances. In *Carey,* the court carefully noted as an initial matter:

> "[T]his case does not involve the type of direct and obvious conflict at issue when the vocational expert's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT. Neither does this case involve the less obvious conflict created when the vocational expert's testimony creates a conflict or discrepancy between the ALJ's determination of the claimant's residual functional capacity and the DOT job descriptions..... **What is involved here is merely an alleged conflict**...."

*Carey,* 230 F.3d at 145–46 (emphasis added). The court subsequently reiterated that it was dealing, at best, with an *implied* or *indirect* conflict between the vocational expert's testimony and the DOT. *Id.,* at 147.

Similarly, *Haas* concerned vocational expert testimony that was "not necessarily a conflict with the DOT." *Haas,* 91 Fed. Appx. at 948. The administrative law judge posed a hypothetical question asking the vocational expert to assume that an individual had residual functional capacity for sedentary work. The vocational expert identified several alternative and available jobs that such a person could perform. The DOT's listing for those jobs indicated that some were performed at the light exertional level, but that some were sedentary. Therefore, there was no irreconcilable conflict. Otherwise, the vocational expert's testimony constituted substantial evidence. *Id.,* at 949.

Under these extraordinary and extreme circumstances, the Fifth Circuit's refusal to reverse and remand on an after-asserted point of error is understandable and warranted. However, one should not assume that *Carey* and *Haas* articulate a rule of general application in all circumstances. If for no other reason, district courts should proceed cautiously because vocational testimony regarding a hypothetical claimant's ability to perform alternative available work is relevant to a "Step 5" determination wherein the burden is on the *Commissioner* to show that a claimant can perform alternative available work.[16] The Ruling at issue places the burden of making necessary inquiries and providing a reasonable explanation for apparent conflicts on the administrative law judge, not the claimant.

In the present case, the alleged conflict is facial and apparent. It squarely fits within one of the scenarios *Carey* specifically excepted from its decision: the vocational expert's testimony creates a conflict or discrepancy between ALJ Raines's de-

---

provide, however, that unpublished opinions may be persuasive.

**16.** Under the five-step sequential analysis for initial disability determinations established in 20 C.F.R. § 404.920, the claimant bears the burden of proof until the initial inquiry at Step 5, where the burden shifts to the Commissioner. *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir.2002); *Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir.1987).

termination of the plaintiff's residual functional capacity and the DOT job descriptions. In this circumstance, *Prochaska*'s reasoning is persuasive:

> "*[Claimant] was not required to raise this issue at the hearing, because the Ruling places the burden of making the necessary inquiry on the ALJ.*"

*Prochaska,* 454 F.3d 731, 735–36.

In sum, this is not a situation where the court is justified in concluding that plaintiff waived or forfeited his Soc. Sec. R. 00–4p argument by failing to raise it at the administrative evidentiary hearing.

### V. CONCLUSION AND RECOMMENDATION

The plaintiff has demonstrated error in the Commissioner's failure to consider his application in accordance with a governing Ruling. The plaintiff further has demonstrated prejudice by showing that there might have been a different decision had the Ruling been followed. Because the error involved failure to follow a Ruling in the face of a direct and obvious conflict between vocational expert testimony and the DOT at a stage of the proceeding when the burden of proof rested with the Commissioner and not the plaintiff, there is no reason for the court to conclude that interests of justice warrant a holding that plaintiff forfeited or waived the error by not raising it in administrative proceedings. Therefore, the Commissioner's decision should be reversed and remanded with instructions to reconsider vocational evidence in accordance with Soc. Sec. R. 00–4p.

### VI. OBJECTIONS

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objection to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendation contained in this report within 10 days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations.