David J. GASPARD

v.

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER.

No. 1:07–CV–943.

United States District Court, E.D. Texas, Beaumont Division.

April 8, 2009.

Steven S. Packard of Packard Packard & LaPray, Lake Charles, LA, for Plaintiff.

Earnie Artsauna Joe of Social Security Administration, Dallas, TX, for Defendant.

### MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

THAD HEARTFIELD, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct, and the Report of the United States Magistrate Judge is **ADOPTED.** A Final Judgment will be entered separately, affirming the decision of the Commissioner and dismissing this action.

### Report and Recommendation of United States Magistrate Judge

EARL S. HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1]

### I. Nature of the Case

This action requests judicial review of the Commissioner of Social Security Administration's decision denying plaintiff's application for disability-based benefits. United States district courts may review such decisions. 42 U.S.C. § 405 (2003). However, Congress limits the scope of judicial review to determinations as to whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995); *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992). When proper principles of law were applied, and the Commissioner's decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. of New York v. N.L.R.B.,* 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also,* 42 U.S.C. § 405(g).

### II. Proceedings

Plaintiff applied for disability insurance benefits (DIB[2]). He claims disability due

---

1. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R.1(H) for the Assignment of Duties to United States Magistrate Judges. *See also* General Order 05–06.

2. DIB, authorized by Title II of the Social Security Act and funded by Social Security taxes, provides income to workers who contribute premiums through federal Old Age, Survivors, and Disability Insurance payroll deductions or self-employment taxes, and who are subsequently forced by disability into involuntary, premature retirement. *See* So-

to degenerative changes of his right shoulder, right elbow, right hand, neck, and back; a reflex sympathetic dystrophy syndrome (RSDS); chronic regional pain syndrome (CRPS) following a crushing injury to his right upper extremity (his dominant arm); and multiple surgeries. After an initial administrative denial, plaintiff requested and received an evidentiary hearing before an administrative law judge (ALJ), Walter Orr.

ALJ Orr developed a complete evidentiary record consisting of plaintiff's testimony, a medical expert's testimony, a vocational expert's (VE) testimony, a psychological evaluation, and all of plaintiff's medical treatment records. Of primary relevance to this action was testimony from the vocational expert, Russell B. Bowden.[3] Responding to a hypothetical question posed by ALJ Orr, VE Bowden opined that a person whose residual functional capacity is the same as plaintiff's can still perform several jobs available in significant numbers in the economy.

Based primarily on VE Bowden's testimony, ALJ Orr issued an unfavorable decision. The Appeals Council denied plaintiff's request for review of ALJ Orr' decision. Plaintiff then timely filed the instant appeal in federal court.

### III.   Administrative Determination

ALJ Orr's written decision is thorough and well-reasoned. He concluded that plaintiff is so severely impaired that he no longer can perform any of his past relevant work.[4] He further concluded that plaintiff has residual functional capacity for light work, but that capacity is so hampered by exertional and nonexertional limitations that plaintiff cannot perform most jobs even in that category.[5] One such limitation was inability to do more than unskilled work because of medication side effects. And when explaining that particular limitation in his hypothetical question to VE Bowden, ALJ Orr stated:

> In other words, he wouldn't be able to mentally function for complex or detailed tasking. He wouldn't be able to maintain the kind of concentration that would be required for complex or detailed work. *Ought to be able to do simple one or two-step tasks on a repetitive basis where concentration really isn't required.*

Tr. 91, (italics added).

After factoring in all elements of the hypothetical question (which corresponded to plaintiff's residual functional capacity and limitations), VE Bowden testified that a person with such impairments, limitations and residual capacity for light work

---

CIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 136.1 (14th ed.2001).

**3.** Russell Bowden, M. Ed., L.P.C. is a vocational rehabilitation counselor and licensed counselor since 1983. He received his bachelor's degree in counseling psychology from Ottawa University in 1977 and his master's degree in counseling from Texas Tech University in 1981.

**4.** The severe impairments found by ALJ Orr are: residuals of degenerative changes of his right shoulder, right elbow, right hand and of reflex sympathetic dystrophy syndrome (RSDS)/chronic regional pain syndrome (CRPS) following a crush injury to his right

upper extremity and multiple surgeries. [Tr. 24]

**5.** The additional limitations which ALJ Orr found are: "frequently lift and/or carry 10 pounds and occasionally up to 20 pounds; sit 6 hours in an 8–hour workday; stand and/or walk 6 hours in an 8–hour workday; and push and/or pull with his left upper extremity commensurate with lifting limitations. He had the non-exertional limitations of inability to use his right upper extremity more than occasionally and only as a helper and inability to perform more than unskilled work activity secondary to side-effects from medication." Tr. 26 (underscoring added).

can perform jobs that exist in significant numbers in the national economy. Specifically, he testified that such a person can work as a *belt inspector, laundry inspector,* and *food inspector* (jobs within the light work category). Tr. 92. Further, he opined that such a person also can perform work as a *lens inspector, film inspector,* or a *dowel inspector* (jobs within the less demanding sedentary work category). Tr. 93. Regarding the limitation that plaintiff can use his dominant (right) arm[6] only occasionally and then as a helper, VE Bowden supported his opinion by stating that in his professional practice, he had successfully placed into those very jobs persons "that have had amputations of their dominant arm." Tr. 92. Relying on that testimony, ALJ Orr concluded that claimant is not disabled pursuant to the Social Security Act because he remains capable of engaging in substantial gainful employment.

IV. Points of Error and Commissioner's Response

Plaintiff does not challenge any of ALJ Orr's findings and conclusions regarding his impairments or residual functional capacity. Nor does plaintiff assert that ALJ Orr failed to apply correct principles of law. The sole challenge to the adverse decision is that it lacks substantial evidentiary support. Plaintiff articulates that error as follows:

*"The Commissioner's decision is not supported by substantial evidence because:*

1. *The vocational testimony, upon which the ALJ's decision is based, is facially unreliable as the reasoning skills and temperaments required by the jobs identified by the VE exceed the limitations contained in the hypothetical questions to the VE.*

2. *The ALJ failed to elicit a reasonable explanation for the inconsistency between the VE testimony and the information contained in the DOT pursuant to Soc. Sec. R. 00–4p.*

3. *The ALJ relied on defective VE testimony that the Job of Dowel Inspector existed in substantial numbers in the local and national economy."*

Pl.'s Br., p. 1. Plaintiff's brief acknowledges that the first two points are peas in the same pod. Both turn on whether the vocational expert's testimony conflicted with information in the United States Department of Labor's *Dictionary of Occupational Titles.*

The Commissioner's brief defends ALJ Orr's decision as being supported by substantial evidence at every crucial step. Addressing plaintiff's specific points, the Commissioner argues that there is no obvious conflict between VE Bowden's testimony and the *Dictionary of Occupational Titles,* and even if there were an arguable or implicit conflict, plaintiff waived the point by not cross-examining VE Bowden on the subject. Second, the Commissioner argues that VE Bowden provided reliable and substantial evidence that the jobs plaintiff can still perform exist in significant numbers in the national economy, and specifically the job of dowel inspector. Therefore, the Commissioner asserts that the court must affirm his decision.

V. Discussion and Analysis

*A. Introduction*

This case is both refreshing and depressing from the perspective of a reviewing judge. It is refreshing because the administrative law judge's written decision is excellent in every respect; because the

---

6. Claimant testified that while he was ambidextrous and could use either hand before the accident, he preferred using his right. Tr. 61.

plaintiff's brief challenging the decision is well-crafted, if not ingenious; and because the Commissioner's brief *actually address-es the points argued by plaintiff,* and does so capably. This is a rare luxury.

On the other hand, the case is depressing. Plaintiff's impairments are such that a six-year old child would readily perceive that plaintiff is disabled in any delineative, real-world discernment of the term. Yet, both the Commissioner and the court must evaluate and review plaintiff's claims in light of the eccentric and pragmatically unconventional eligibility standards established by the Social Security Act, described on one occasion by the governing circuit court of appeals as "bordering on the unrealistic."[7] Moreover, the degree of deference owed to the Commissioner's expertise substantially ties the court's hands. The end result, therefore, can leave a bitter aftertaste suggesting that the spirit of true justice has been trampled.

### B. Vocational Experts and Dictionary of Occupational Titles

#### 1. What are they? What purposes do they serve?

Administrative adjudicators of social security disability claims utilize a five-step, sequential evaluation process prescribed by regulation[8] and approved by courts[9] as a fair and just way for determining disability applications in conformity with the Social Security Act and as contributing to uniformity and efficiency in such determi-

nations. When a decision can be made at an early step, remaining steps are not considered. When—as here—a decision is reached only at the last step (Step 5), it means that the claimant established a *prima facie* case of disability, and the burden then shifted to the Commissioner to show that other work exists in the national economy that the claimant can perform despite his or her impairments.[10]

Among the sources of evidence that the Commissioner consults to determine when claimants can perform alternative, available work are vocational experts and a United States Department of Labor publication titled the *Dictionary of Occupational Titles (DOT).* Vocational Experts assess whether jobs exist for a person with the claimant's precise abilities.[11] They also assist in determining complex issues, such as whether a claimant's work skills can be used in other work and the specific occupations in which they can be used.[12] In certain instances, courts even *require* that the Commissioner obtain expert vocational testimony or other similar evidence.[13]

The *DOT* and its supplement, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO),* comprise a comprehensive listing of job titles in the United States, along with detailed descriptions of requirements for each job, including assessments of exertional levels and reasoning abilities necessary for satisfactory performance of those jobs. The Commissioner recognizes

---

**7.** *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir.1981).

**8.** 20 C.F.R. § 416.920 (2005).

**9.** *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell,* 461 U.S. at 461, 103 S.Ct. at 1954).

**10.** *See Perez v. Barnhart,* 415 F.3d 457, 464 (5th Cir.2005) (citing *Masterson v. Barnhart,*

309 F.3d 267, 273 (5th Cir.2002); *Vaughan v. Shalala,* 58 F.3d 129, 132 (5th Cir.1995)).

**11.** *See e.g., Gilliam v. Califano,* 620 F.2d 691, 694 n. 1 (8th Cir.1980).

**12.** *See* 20 C.F.R. §§ 404.1566(e), 416.966(e) (2005).

**13.** *See e.g., See Lawler v. Heckler,* 761 F.2d 195, 198 (5th Cir.1985); *Dellolio v. Heckler,* 705 F.2d 123, 127–28 (5th Cir.1983).

the *DOT/SCO* publications as authoritative, and routinely relies on them "for information about the requirements of work in the national economy." Soc. Sec. R. 00–4p, 2000 WL 1898704, at *2.

### 2. *Conflicts: What Then?*

Regulations clearly permit administrative law judges to rely on either source of information when determining whether claimants can make adjustments to alternative available work. *See* 20 C.F.R. § 404.1566(d), (e) (2005). It is, therefore, foreseeable (if not inevitable) that in some cases a vocational expert's opinion may, as to a particular claimant's ability to perform alternative work, conflict with the *DOT's* explication of the requirements for particular jobs. Such conflicts, while relatively rare, occur frequently enough that various federal trial and appellate courts throughout the nation have grappled with how to resolve such conflicts. Moreover, the Commissioner has issued an interpretive ruling on the subject. *See* Soc. Sec. R. 00–4p, 2000 WL 1898704, at *2.

■ Under governing circuit law, an administrative law judge may *in appropriate cases* give greater weight to expert vocational testimony than to findings in the *DOT*. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir.2000). One obvious reason is that the *DOT* provides only *standardized* job information, whereas a vocational expert's testimony is tailored to an *individual* claimant's work skills as contained in an administrative law judge's hypothetical question. But neither source automatically trumps the other, and neither regulation nor case law ranks one source above the other. Thus, each source initially has equal dignity and effect. *Romine v. Barnhart*, 454 F.Supp.2d 623 (E.D.Tex.2006).

■ An administrative law judge's discretion to choose between conflicting evidence is not unfettered, however. In *Carey v. Apfel*, the Fifth Circuit embraced

what it called a "middle ground." When a *direct and obvious* conflict exists, and the administrative law judge fails to explain or resolve the conflict, the probative value of the vocational expert's testimony is so lessened that a reversal and remand for lack of substantial evidence usually follows. But when the conflict is *tangential, implied or indirect,* and it did not undergo adversarial development at the administrative hearing, the vocational expert's testimony may be accepted and relied upon by the administrative law judge without resolving the later-proffered conflict provided the record reflects an adequate basis for doing so. *Carey v. Apfel,* 230 F.3d at 146.

The Commissioner's policy for addressing and resolving conflicts between expert vocational testimony and *DOT* information does not differentiate between obvious and implicit conflicts. Rather, the Commissioner directs that in *all* cases *"the adjudicator has an affirmative responsibility to ask about any possible conflict between ... VE ... evidence and information provided in the DOT."* Soc. Sec. R. 00–4p, 2000 WL 1898704, at *4. Further, the Ruling mandates:

> *[B]efore relying on VE ... evidence to support a disability determination or decision, [the ALJ] must: Identify and obtain a reasonable explanation for any conflicts ... and Explain ... how any conflict ... was resolved.*

*Id.,* at *1 (emphasis added).

### C. *The Proffered Conflicts In This Case*

#### 1. *Plaintiff's Contentions*

■ The competing arguments as to whether there is an unexplained conflict between the *DOT* and VE Bowden's testimony are tedious. Initially, however, the discussion does not require addressing unbearably arcane subjects. ALJ Orr clearly complied with his duty under Soc. Sec. R. 00–4p by inquiring as to whether VE

Bowden's opinion conflicted with relevant information in the *DOT*. VE Bowden responded that there was no conflict, and none was otherwise suggested during cross-examination. Thus, nothing at the hearing triggered any reason for ALJ Orr to "obtain a reasonable explanation" for any identified conflicts.

Plaintiff argues, however, that such conflicts do exist, and that they are direct and obvious. As noted earlier, the *DOT* identifies not only *exertional* requirements for each listed job, but also the *reasoning* abilities necessary for satisfactory performance of the work. The *DOT* classifies every listed job as requiring a reasoning ability level from 1 to 6. Plaintiff argues that his limitation to "simple one or two-step tasks on a repetitive basis where concentration really isn't required" (as posited by ALJ Orr in his hypothetical question to VE Bowden) corresponds almost verbatim with the *DOT*'s definition of reasoning ability level 1.[14] However, the *DOT* states that higher reasoning ability levels are required for four of the six jobs which VE Bowden opined that plaintiff can still perform. Specifically, the belt, laundry and film inspector jobs require a reasoning ability level of 2,[15] while the lens inspector job requires a reasoning ability level of 4.[16]

Thus, as to these four jobs, plaintiff perceives a clear conflict with the *DOT*'s job requirement information and VE Bowden's testimony that plaintiff, with a limitation equivalent to a reasoning ability level of 1, can perform jobs requiring reasoning ability levels of 2 and 4.

Plaintiff also perceives another conflict regarding four of the six jobs that VE Bowden testified that plaintiff can still perform (substantial duplication but not identical to four just discussed). To construct this conflict, plaintiff first cites the *DOT*'s companion occupational analysis product, the *SCO*, which lists worker trait characteristics for each job catalogued in the *DOT*. One such characteristic is the letter "R" denoting it as one involving "performing repetitive or short-cycle work."

The *SCO* refers to but does not incorporate by reference another Department of Labor publication, the *1991 Revised Handbook for Analyzing Jobs (RHAJ)* which identifies various factors important to adjustments workers must make for successful job performance.[17] Included in it is a factor designated as "Temperaments" which, in turn, consists of eleven separately-identified components reprinted below in the note.[18] Of these, one is an "R"

---

**14.** "Apply commonsense understanding to carry out simply one– or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Dictionary of Occupational Titles*, Vol. II, App. C § III.

**15.** "Apply commonsense understanding to carry out detailed by uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, Vol. II, App. C § III.

**16.** "Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written,

oral, diagrammatic, or schedule form." *Dictionary of Occupational Titles*, Vol. II, App. C § III.

**17.** According to its introduction, the *RHAJ* "contains the methodology and benchmarks used by the cooperative Federal–State Occupational Analysis Program in gathering and recording information about jobs. Major Occupational Analysis products include the *Dictionary of Occupational Titles (DOT)* which contains occupational definitions of some 13,-000 occupations, *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles (SCO)*, and the *Guide for Occupational Explorations.*"

**18.** "The 11 Temperament factors identified for use in job analysis are:

factor, which, like the *SCO*, denotes "repetitive or short-cycle" work. This "R" factor is further defined in the *RHAJ* as follows:

> "performing a few routine and uninvolved tasks over and over again according to set procedures, sequence, or pace with little opportunity for diversion or interruption. Interaction with people is included when it is routine, continual, or prescribed."

U.S. Dep't of Labor, Revised Handbook for Analyzing Jobs 10–2 (1991).

Plaintiff argues that this definition necessarily connotes work done at a forced or assembly-line pace, and requires fast, frequent or constant reaching and handling. As such, plaintiff further argues that it cannot include one-handed jobs. Plaintiff then observes that four jobs identified by VE Bowden, viz., laundry, food, dowel and film inspector, carry the "R" factor designation. Plaintiff concludes that since ALJ Orr found that plaintiff is limited to only using his right arm and hand occasionally and then only as a helper (see note 5, supra), VE Bowden's testimony conflicts with information in the *DOT/SCO/RHAJ* trilogy of Department of Labor resources.[19]

When these proffered conflicts, i.e., the reasoning ability conflicts and the temperament conflicts, are viewed *in toto*, they arguably impugn all six jobs which VE Bowden opined that plaintiff can still perform despite his limitations. Plaintiff therefore concludes that ALJ Orr's adverse decision must be reversed for lack of substantial evidence.

### 2. *Commissioner's Response*

As for the reasoning level conflicts advocated by plaintiff, the Commissioner responds, first, that there is no intrinsic conflict between VE Bowden's opinion and information in the *DOT*. The Commissioner does not dispute plaintiff's assertion that four of the jobs identified by VE Bowden carry reasoning levels of 2 or 4. Nor does the Commissioner contest plaintiff's characterization of his limitation of being able to do only "simple one or two-step tasks on a repetitive basis where concentration really isn't required" as substantially tracking the *DOT*'s definition of reasoning ability level 1. However, the Commissioner argues that it does not necessarily follow that a job requiring a reasoning ability level of 2 or more conflicts

D—DIRECTING, Controlling, or planning activities of others.
R—Performing REPETITIVE or short-cycle work.
I—INFLUENCING people in their opinions, attitudes, and judgments.
V—Performing a VARIETY of duties.
E—EXPRESSING personal feelings.
A—Working ALONE or apart in physical isolation from others.
S–Performing effectively under STRESS.
T—Attaining precise set limits, TOLERANCES, and standards.
U—Working UNDER specific instructions.
P—Dealing with PEOPLE.
J—Making JUDGMENTS and decisions."
U.S. Dep't of Labor, Revised Handbook for Analyzing Jobs 10–1 (1991).

**19.** Plaintiff's brief also refers to other temperaments factors listed in *SCO*, viz., "T"

(attaining precise set limits, tolerance and standards); "J" (making judgments and decisions) and "U" (working under specific instructions). Plaintiff suggests that all of the jobs cited by VE Bowden have a combination of these factors, which collectively conflict with ALJ Orr's finding that plaintiff is restricted to jobs with minimal need for concentration. Other than making this conclusory assertion, plaintiff's brief does not develop this argument. Therefore, analysis here is limited to the better-developed and reasoned argument regarding the proffered conflict between *DOT* jobs with a temperaments factor "R" and VE Bowden's opinion that plaintiff can perform such work with a limitation of using one hand and arm only occasionally and as a helper.

with the *DOT*. The Commissioner notes that ALJ Orr found plaintiff's residual functional capacity to be limited to *unskilled* work which, by its very definition is limited to *simple* duties.[20] The Commissioner further notes that *all* of the jobs identified by VE Bowden are classified as unskilled, and that the "limitation to simple duties is already subsumed within the 'unskilled limitation.' " Comm'r Br. at 6.

Second, the Commissioner argues that even if there were an arguable conflict, it is tangential in nature, and thus waived under the Fifth Circuit's "middle ground" rule which provides that unless the merits of implied or indirect conflicts are developed through adversarial cross examination at the administrative hearing, they will not be entertained in actions for judicial review.

As for the temperaments factor conflict advanced by plaintiff, the Commissioner dismisses the point as wholly without merit because it depends on *RHAJ* factors and definitions. The Commissioner asserts that temperaments classifications are not listed in the *DOT*, and unlike the *DOT* and *SCO*, the Commissioner does not recognize *RHAJ* as a reliable source of vocational information. Further, the Commissioner has not taken administrative notice of information in *RHAJ* such that it might be properly considered a supplement or companion publication to the *DOT*. Thus, whatever might otherwise be said for the general utility of *RHAJ* information, one cannot argue that it represents a *conflict with the DOT*, direct or implicit.

### 3. *Application*

#### a. *The Temperament Factor Conflict*

■ The Commissioner clearly has the better of the arguments regarding the suggested temperament-factor-"R" conflict. VE Bowden testified that plaintiff can still perform available work as inspector of laundry, food, dowels and film. Each such job carries a temperaments factor of "R" according to the authoritative *SCO*. The suggested conflict between the *DOT/SCO* and VE Bowden's opinion hinges on a *RHAJ* definition of the "R" factor, coupled with a forensic argument that such definition *necessarily* presupposes forced or assembly-line paced work which (plaintiff further presupposes) cannot be performed by a person who can use his dominant upper extremity only occasionally. This argument has elements of brilliance, as the *SCO* (which the Commissioner accepts as authoritative) does contains references to the *RHAJ* that arguably support a conclusion that the *Department of Labor* considers the *SCO* and the *RHAJ* to complement each other.[21] But in absence of proof that the *Commissioner* takes administrative notice of *RHAJ* information, or otherwise embraces it as authoritative, the court cannot connect the dots in such a way as to conclude that a *RHAJ*-based conflict runs afoul of either circuit law or Soc. Sec. R. 00–4p which require certain actions when a conflict exists with the *DOT*. *See Burns v. Barnhart*, 312 F.3d 113, 128 n. 9 (3rd Cir.2002) ("While aptitudes [published in the *Guide for Occupational Exploration* (3d ed.2001) ] are discussed in various occupational handbooks ... aptitude levels are not in the *DOT* or any other source of

---

**20.** "Unskilled work is work which needs little or no judgment to do *simple duties* that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a) (2004)(emphasis added).

**21.** The *SCO* states that the *"Handbook for Analyzing Jobs,"* 1991 contains information about components of occupational analysis used by the U.S. Department of Labor." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,* 1993, App. ID.

which the Social Security Administration has taken administrative notice. Therefore, the *DOT* and testimony of the vocational expert was [*sic*] not necessarily inconsistent in this regard, so the duty on the part of the ALJ to inquire into conflicts did not arise.")

In any event, any arguable *RHAJ*-based conflict is implied and indirect at best. Under *Carey v. Apfel, supra,* it must have been developed in the adversarial context at the administrative hearing to merit consideration in a subsequent action for judicial review. Since it was not pursued at the administrative hearing, it cannot now be entertained.

#### b. The Reasoning Ability Level Conflict

■ Plaintiff's proffered reasoning-ability-level conflict presents a closer question. The Commissioner strains unpersuasively to suggest that the six reasoning ability levels meticulously listed and defined in the *DOT* are mooted or trumped when a residual functional capacity for unskilled work is present. Those reasoning ability levels have meaning and purpose in all situations, and simply may not be ignored or disregarded.

Nonetheless, the Commissioner's argument is well-taken that a limitation of "simple one or two-step tasks on a repetitive basis where concentration really isn't required" does not *necessarily* preclude ability to perform jobs with reasoning levels of 2 or higher. Indeed, several other cases either hold or intimate that a limitation to simple and repetitive tasks is *consistent* with a reasoning· level of 2.[22] Further, plaintiff cites no authority supporting the assertion that belt, laundry, film and lens inspectors perform more than simple tasks on a repetitive basis, or that enhanced concentration is required for those jobs.

Under this circumstance, the court must conclude that a *possibility* exists that *some* jobs requiring reasoning level 2 or higher *may* conflict with plaintiff's specific limitations. But such conflict is not inevitable. As such, it is only arguable, not obvious or direct. Again, the point cannot be entertained in this proceeding because it was not developed in the adversarial context at the administrative hearing.

Even were the court to conclude otherwise, this proffered error would not warrant a reversal of the Commissioner's decision. Assuming *arguendo* that the identified jobs of belt, laundry, film and lens inspectors conflict with the *DOT* because they require reasoning levels 2 or higher, VE Bowden identified two other jobs—food inspector and dowel inspector—that require only reasoning level 1. The Commissioner's burden at Step 5 of the sequential evaluation process described earlier is satisfied by showing the existence of only *one* job with a significant number of available positions that the claimant can perform. *Evans v. Chater,* 55 F.3d 530, 532–33 (10th Cir.1995).

#### c. Adequate Basis for Reliance on Vocational Expert's Testimony

■ Under *Carey v. Apfel, supra,* even when an indirect conflict between the *DOT* and a vocational expert's testimony is

---

22. *See, e.g., Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir.2005)(holding that reasoning level two "appears more consistent with" limitation of "simple and routine work tasks"); *Money v. Barnhart,* 91 Fed.Appx. 210, 215 (3d Cir.2004)(holding that "[w]orking at reasoning level 2 would not contradict the mandate that [plaintiff's] work be simple, routine and repetitive"); *Riggs v. Astrue,* 2008 U.S.Dist.LEXIS 92922, 2008 WL 1927337 (W.D.Wash. Mar.31, 2008); *Meissl v. Barnhart,* 403 F.Supp.2d 981 (C.D.Cal.2005); *Flaherty v. Halter,* 182 F.Supp.2d 824 (D.Minn.2001).

waived because not developed at the administrative level, once it is raised in an action for judicial review, the court must still investigate whether the "record reflects an adequate basis" for relying on VE Bowden's testimony. As observed earlier, the regulations specifically contemplate routine use of vocational experts to determine complex issues such as matching a claimant's work skills with available occupations, and in some instances even *require* it. Moreover, an administrative law judge has latitude in appropriate cases to generally *prefer* testimony of a vocational expert over conclusions in the *DOT. Carey v. Apfel*, 230 F.3d at 146; *Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir.2002). Thus, there was no structural error in the Commissioner's reliance on VE Bowden for information as to the availability of jobs in the national and regional economy that an individual with a residual functional capacity such as plaintiff's can perform.

Second, and almost eerily, the issue presented here is similar to the one considered in *Carey v. Apfel*, i.e., whether the applicant could perform specified jobs with one arm and hand. Here, like in *Carey v. Apfel*, the vocational expert testified clearly that plaintiff can perform the jobs discussed earlier. Further, VE Bowden supported his assertion with unchallenged testimony that in his clinical practice, he previously had successfully placed into such jobs persons with their dominant hands or arms completely amputated. In the context of the record as a whole, this testimony was adequate to support ALJ Orr's determination that plaintiff can perform the jobs identified by VE Bowden.

## D. Availability of Identified Jobs

Plaintiff's last point of error challenges the sufficiency of the evidence to support VE Bowden's testimony that the position of dowel inspector—one of the jobs which VE Bowden identified as being within the range of plaintiff's residual functional capacity—exists in significant numbers in the national or regional economy. This point, even if sustained, will not warrant reversal as it would not impugn VE Bowden's testimony regarding the five other jobs which are within the range of plaintiff's residual functional capacity. Consideration of this point, therefore, may be omitted entirely if the court adopts the above analysis regarding the argued reasoning ability level and temperaments conflicts. However, for the sake of completeness, a brief discussion and analysis follows:

### 1. The "Significant Numbers" Requirement

The Social Security Act requires that before an individual is considered not disabled, work which that individual can still perform must exist "in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work". 42 U.S.C. § 423(d)(2)(A). The statute further clarifies that with respect to any individual, "work which exists in the national economy" means "work which exists in *significant numbers* either in the region where such individual lives or in several regions of the country." *Id.* (italics added). The Commissioner's implementing regulation states:

> "We consider that work exists in significant numbers when it exists in significant numbers either in the region where you live or in several other regions of the country...."

20 C.F.R. § 404.1566 (2005) (italics added).

Beyond these general parameters, neither the statute nor the Commissioner provides reviewing courts with explicit guidance for gaging when work exists "in the national economy." This court has

pondered the question previously, and articulated a reviewing court's dilemma as follows:

> The Fifth Circuit has offered no test or "magic number" for determining a "significant number." ... However, the Sixth Circuit has indicated a judge should consider, when determining "a significant number," the level of the claimant's disability, the reliability of the vocational expert's testimony, the reliability of the claimant's testimony, the distance the claimant is capable of traveling to engage in assigned work, and the isolated nature of the offered positions.... The Eighth Circuit stated such a determination "should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation."

*Mericle v. Shalala*, 892 F.Supp. 843, 847 (E.D.Tex., 1995) (citations omitted).

Other courts have identified similar factors, such as comparing the available jobs with the percentage of the work force,[23] or fraction of the jobs existing in the national economy,[24] or the geographic expansiveness of the region in which the identified jobs exist.[25] But in terms of raw numbers, there appears to be wide disparity among the courts as to what satisfies the requirement. In *Mericle, supra*, the court found that 870 jobs in the whole state of Texas did not amount to "significant numbers." *Mericle* cited and relied on another Texas case, *Walker v. Shalala* (see note 21, *supra*) wherein the court held that 1800 jobs in Texas did not amount to "significant numbers," and on two out-of-circuit cases

(cited in notes 22 and 23, *supra*) holding, respectively, that 1000 jobs in an entire state and only 4000–5000 jobs in the entire nation were insufficient. But various federal appellate courts have found 500, 650–900 and 1400 jobs sufficient under particular circumstances of those cases.[26]

Plaintiff's final point of error must be examined with these not-so-settled principles of analysis in mind.

### 2. *Competing Arguments*

VE Bowden testified that 23,000 inspector/quality control jobs exist in Texas, and 230,000 exist nationwide for light level jobs, such as belt inspector, food inspector, or a laundry inspector. Tr. 92. Further, he testified that three of the jobs he identified as being within plaintiff's residual functional capacity, *viz.*, "lens inspector, film inspector, or a dowel inspector" are *examples* of sedentary jobs with "8, 000 positions in Texas and 80,000 in the U.S. economy." Tr. 93.

Referring to an unspecified "OES group,"[27] plaintiff argues that a dowel inspector is but one of 781 unique *DOT* occupations within the statistical grouping cited by VE Bowden. Thus, the number of dowel inspector jobs in Texas is obviously much less than 8000, and may constitute as few as only 41 jobs in Texas, assuming that all jobs in the referenced "OES group" are allocated evenly. Pl.'s Br. 21–22. That few number of jobs in a populous state as geographically expansive as Texas clearly would represent "isolated jobs that exist in only very limited numbers in very few locations" outside the region where

**23.** *Walker v. Shalala*, No. H–93–2507, 1994 WL 171209, (S.D.Tex. Jan.6, 1994).

**24.** *Leonard v. Heckler*, 582 F.Supp. 389,(M.D.Pa.1983).

**25.** *Waters v. Sec'y of Health and Human Serv.*, 827 F.Supp. 446, (W.D.Mich.1992).

**26.** *Allen v. Bowen*, 816 F.2d 600 (11th Cir. 1987); *Jenkins v. Bowen*, 861 F.2d 1083 (8th Cir.1988); *Hall v. Bowen*, 837 F.2d 272 (6th Cir.1988).

**27.** Presumably, "OES group" refers to *Occupational Employment Statistics* published by the U.S. Bureau of Labor Statistics.

plaintiff lives, and therefore should not be considered "work which exists in the national economy" under the Commissioner's regulation quoted above.

The Commissioner's brief complains that plaintiff's brief does not constitute a "reasoned explanation for his criticism of the VE's testimony." Def's Br. 10. Further, the Commissioner argues that "the issue is not whether Plaintiff could perform a specific number of available dowel inspector jobs but, rather that Plaintiff could in general perform work which exists in significant numbers in the Texas and national economies." *Id.*

3. *Analysis*

The competing arguments just mentioned are like ships passing in the night, neither acknowledging or recognizing the other. Intuitively, plaintiff may have a valid point that—given his exceptionally limited vocational profile—VE Bowden's opinion regarding the number of available jobs should have been much more narrowly tailored than to inspector/quality control jobs generally, or even to an OES group containing 781 unique *DOT* occupations. On the other hand, plaintiff did not cross-examine VE Bowden on this point, and the administrative record contains no data which corroborates plaintiff's numerical assumptions.

If the "work which exists in significant numbers in the national economy" issue were the only asserted point of error, this might be an appropriate instance for the court to remand for clarification. However, the mootness of this point, articulated at the outset of this section, precludes such action.

### VI. Recommendation

The Commissioner's decision should be affirmed.

### VII. Objections

■ Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

■ A party's failure to object bars that party from: (1) entitlement to de novo review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

March 11, 2009.