# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 94-50564
Summary Calendar
_____


FREDA R. VAUGHAN,

Plaintiff-Appellant,

versus

DONNA SHALALA,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Western District of Texas
(A-93-CA-260)
_____

(May 17, 1995)

Before JONES, BARKSDALE and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

On September 24, 1991, Freda R. Vaughan applied for disability insurance benefits, alleging disability since December 31, 1986. Her application was denied initially and on reconsideration. Vaughan then requested and received a hearing before an Administrative Law Judge (ALJ). The ALJ determined that Vaughan was unable to perform her past work but had the residual

_____

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

functional capacity to perform a wide range of sedentary work. Thus, the ALJ held that Vaughan was not disabled within the meaning of the Social Security Act at any time through December 31, 1988, the date she was last insured for disability benefits. The decision of the ALJ became the final decision of the Secretary when the Appeals Council denied Vaughan's request for review.

Vaughan filed suit in the district court seeking review of the Secretary's decision. Both the magistrate judge and district court authored opinions rejecting appellant's challenges to the ALJ's decision. On appeal, Sullivan raises many of the same objections, and we find them no more persuasive than the other judges did.

## BACKGROUND

The following salient facts were presented for the Secretary's determination. Vaughan, a high school graduate, was born on June 1, 1937. Her work experience includes co-owning a liquor store and a furniture store, and working as a supervisor in the mail rooms of an oil company and a savings and loan. She last met the earnings requirements for disability benefits on December 31, 1988.

Between 1985 and 1990, Vaughan was treated conservatively for a variety of ailments by a family practitioner, Dr. Norman Moore. She saw him for hip, leg, and chest pain in 1986, and for back pain, dizzy spells, and pain in her right arm in 1988. On May 6, 1988, her blood pressure was measured at 140/80. On April 3,

2

1990, it had risen to 170/90. Dr. Moore's records contain no specific diagnosis of Vaughan's problems.

In July 1990, after her eligibility expired, Dr. Jorge Duchicela, also a family practitioner, began treating Vaughan for headaches and pain in her legs and tailbone, hypertension, and pain in her back, arms, and legs.

At the July 22, 1992, hearing before the ALJ, Vaughan testified that she suffered from progressively worsening pain and "tingling" in her arms and legs, a condition present to some degree for 20 years. She had recently begun taking "Propox," which relieved some of the pain. Vaughan also testified that she had suffered from high blood pressure for 20 to 25 years. Although she had experienced severe headaches in the past, these were currently controlled with medication. She also testified that she had suffered a "mini-stroke" around 1988, resulting in some memory loss. According to Vaughan, the blood pressure medication that she had taken that morning caused her to have difficulty thinking. She also testified that her family performed most of the household chores.

The vocational expert, Robert Marion, testified that Vaughan's past relevant work was classified as skilled and that these skills were transferable to sedentary jobs. Such jobs included receptionist, interview clerk, and cashier, which existed in the hundreds of thousands in the national economy. Vaughan's counsel challenged Marion's figures regarding the number of these

3

jobs that were available in the national economy.  Marion responded that his figures were accurate.

In this case, the ALJ determined that although Mrs. Vaughan cannot perform her past relevant work, she could perform a wide range of sedentary work[1] from December 31, 1986, the alleged onset date of disability, through December 31, 1988, the date she was last insured for benefits.  Thus, the ALJ concluded that Vaughan was not disabled within the meaning of the Social Security.

### DISCUSSION

Vaughan first argues that the ALJ's determination that she was not disabled is not supported by substantial evidence.  She states that the ALJ's finding that she could perform the full range of sedentary work conflicts with Dr. Duchicela's evaluation of her exertional abilities, the objective medical evidence of high blood pressure and cholesterol, and her testimony at the hearing regarding her limitations.

Contrary to Vaughan's allegation, the ALJ did not find that Vaughan could perform the full range of sedentary work. Rather, the ALJ found that Vaughan could perform a wide range of sedentary work.  This conclusion is supported by substantial evidence.  First, the record reflects that Vaughan was able to, and did, work for several years while suffering from ailments she now asserts are disabling.  see Fraga v. Bowen, 810 F.2d 1296, 1305 &

---

[1]    "Sedentary work involves lifting no more than 10 pounds at a time" and also "involves sitting," although "a certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. § 404.1567(a).

4

n.11 (5th Cir. 1987) (ability to work despite pre-existing condition supports ALJ's finding of not disabled). Second, no physician who examined Vaughan pronounced her disabled. See Harper v. Sullivan, 887 F.2d 92, 97 (5th Cir. 1989) (substantial evidence supported ALJ's finding that claimant's subjective symptomology not credible when no physician on record stated that claimant was physically disabled). In her "Disability Report," submitted nearly three years after the date she last met insured status, Vaughan acknowledged that no physician had advised her to limit her activities in any way. Accordingly, Dr. Duchicela's November 1991 assessment that Vaughan could lift only five pounds does not alter the validity of the ALJ's decision.

Third, although Vaughan alleged a very limited activity level at the hearing, she stated in the "Disability Report" that her social contacts and driving were not restricted and that she could perform household chores like cooking, making the bed, and washing. The ALJ concluded that several of the symptoms allegedly plaguing Vaughan were not consistent with the objective medical evidence. See Anthony v. Sullivan, 954 F.2d 289, 296 (5th Cir. 1992). Thus, the ALJ's finding that Vaughan's complaints were not debilitating is supported by substantial evidence.

Vaughan next asserts that the ALJ failed to use proper legal standards in denying benefits. First, she argues that the ALJ improperly relied on the "grids" contained in Subpart P Appendix of the Medical-Vocational Guidelines, which presume that jobs are available in the national economy for claimants meeting

5

certain criteria, to direct a decision of not disabled.  See 20 C.F.R. §§ 404.1569 Subpt. P, App. 2.  This contention misconstrues the record.  The ALJ found that Vaughan's nonexertional limitations prevented her from performing the full range of sedentary work activity, but that she was not disabled within the framework of Rule 210.07, considered in light of the vocational expert's identification of jobs available in the national economy that she could perform.

Vaughan's contention that the ALJ "applied improper legal standards in failing to make a finding on [her] credibility regarding statements of disabling pain, dizziness and confusion prior to December 31, 1988[,]" is also contradicted by the record.  The ALJ made specific credibility determinations regarding Vaughan's allegations of pain and discomfort.

Vaughan also contends that there was not substantial evidence that there were jobs available in the national economy that she was capable of performing.  We disagree.  A vocational expert is called to testify because of his familiarity with job requirements and working conditions.  Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986).  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  Id.  At Vaughan's hearing, the vocational expert explained that he determined the availability of the receptionist, interview clerk, and cashier jobs in the national economy by referring to the Dictionary of Occupational Titles (DOT), in

6

conjunction with additional sources.  The expert also found that Mrs. Vaughan possesses considerable transferable work skills. Thus, the vocational expert relied on his expertise to arrive at the conclusions that he gave to the ALJ, and he explained how he arrived at his conclusions.  See Fields, 805 F.2d at 1170.  To insist, as Vaughan now does, that the ALJ must consider not simply the existence of generic jobs such as cashier but their specific working conditions is incorrect.  The contention comes close to arguing that the vocational expert must identify specific jobs open to a particular claimant, an exercise both futile, overwhelming, and unnecessary.

Vaughan finally contends that she was denied a full and fair hearing because the ALJ asked leading questions of the vocational expert, misstated her disabling conditions in a hypothetical question, refused to let counsel fully cross-examine the vocational expert, and refused to give counsel access to the vocational expert's notes.  These arguments have been addressed fully in district court.  We add only a few observations.  First, the regulations do not require the use of the formal rules of evidence at an administrative hearing.  See 20 C.F.R. § 404.950(c). Second, the ALJ's duty is to develop the facts relative to a claim for benefits fairly and fully, not merely to sit and listen.  Kane v. Heckler, 731 F.2d 1216, 1219 (5th Cir. 1984).  Third, unlike the two cases cited by Vaughan, Lidy v. Sullivan, 911 F.2d 1075 (5th Cir. 1990), cert. denied, 500 U.S. 959 (1991), and Tanner v. Secretary, 932 F.2d 1110 (5th Cir. 1991), the ALJ in this case

7

allowed counsel to cross-examine the vocational expert extensively, including the subject matter of the challenged hypothetical. Accordingly, no reversible error has been shown.

Finally, Vaughan's reliance on <u>Scott v. Shalala</u>, 30 F.3d 33 (5th Cir. 1994), to show that the ALJ did not properly consider the vocational expert's testimony is misplaced. Blue brief, 18-19. In that case, the ALJ made only a "passing reference" to the vocational expert's testimony in finding that the claimant had the residual capacity to perform sedentary work. <u>Scott</u>, 30 F.3d at 35. By contrast, the ALJ in this case found that Vaughan could not perform the full range of sedentary work activity and expressly relied upon the vocational expert's identification of jobs as evidence of Vaughan's ability to perform work in the national economy, despite her nonexertional limitations.

Since Vaughan offered no evidence that she was incapable of performing the types of work that the ALJ determined were available and that she was capable of performing, Vaughan failed to meet her burden of proof under the disability test. <u>Selders v. Sullivan</u>, 914 F.2d 614, 618 (5th Cir. 1990).

For these reasons, the judgment of the district court is **AFFIRMED**.