### Ronney BORNETTE

v.

### Jo Anne BARNHART, Commissioner of Social Security Administration.

#### No. Civil Action No. 1:05–CV–590.

United States District Court,
E.D. Texas,
Beaumont Division.

Nov. 28, 2006.

Steven S. Packard, Packard Packard & Lapray, Lake Charles, LA, for Ronney Bornette.

William Winston Newbill, Social Security Administration, Dallas, TX, for Jo Anne Barnhart.

## MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CRONE, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct, and the Report of the United States Magistrate Judge is **ADOPTED**. A Final Judgment will be entered separately, remanding this action to the Commissioner to consider all impairments; make a function-by-function assessment of plaintiff's residual functional capacity as required by Regulation 20 C.F.R. § 404.1545(b) and Social Security Ruling 96–8p; and reconsider plaintiff's application in light of any additional findings.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

This action requesting judicial review of the Commissioner of Social Security Administration's denial of an application for Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) is referred to the undersigned for review and a recommended disposition.[1]

### I. PROCEEDINGS

DIB and SSI applicants must prove their "disability" as that term is defined in the Social Security Act. Plaintiff claimed disability due to an assortment of alleged impairments, *viz.,* "*back, knees, L [left] shoulder, heart, corpal tunnle sundrom (sic), joint pain, hearing.*" Tr. 79. His application proceeded to an evidentiary hearing before an administrative law judge (ALJ), Earl W. Crump. Tr. 290. Judge Crump considered plaintiff's application in accordance with a five-step sequential analysis prescribed by regulation and approved by courts.[2] ALJ Crump concluded

---

1. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R.1(H) for the Assignment of Duties to United States Magistrate Judges; *see also* Gen. Order 05–6.

2. *See* 20 C.F.R. § 404.1520 (2006). The five sequential steps are as follows:
 1. The Commissioner ascertains whether the applicant is currently engaging in substantial gainful activity. (If so, a finding of non-disability is entered and the inquiry ends.)
 2. The Commissioner determines if the applicant's impairment or combination of impairments is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities. (If not, the inquiry ends and a finding of non-disability is entered.)
 3. The Commissioner determines whether the severe impairment equals or exceeds those in the Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1 ("the Listings"). (If so, disability is presumed and benefits are awarded.)
 4. The Commissioner determines whether the impairment prevents the individual

that plaintiff established a *prima facie* case of disability by showing at Step 4 that he suffers from a severe impairment (degenerative joint disease) that precludes him from performing his past relevant work. However, ALJ Crump further determined that other evidence rebutted the *prima facie* case. Judge Crump found that plaintiff has "residual functional capacity" to perform light work with certain limitations, and that a person with such capacity and limitations can perform alternative available work. Specifically, and based on testimony from a vocational expert witness, ALJ Crump found that plaintiff retains the ability to work as *"an usher/ticket taker, parking lot attendant, and mail clerk."* Tr. 22, Finding 11. These findings generated a conclusion that plaintiff remains capable of engaging in substantial gainful employment, and thus is not disabled within the meaning of the statute.

## II. POINTS OF ERROR

Judicial review of adverse Commissioner's decisions is limited to determinations of whether the decision is supported by substantial evidence and whether it reflects application of correct principles of law. 42 U.S.C. § 405 (2003). Plaintiff contends that the Commissioner failed to apply proper principles of law because:

1. The ALJ failed to properly perform a function by function assessment of the Plaintiff's Residual Functional Capacity by failing to discuss all of the Plaintiff's exertional and non-

exertional limitations in accordance to 20 C.F.R. 404.1545, 416.945; and SSR 96–8p; and

2. The ALJ failed to consider all of Plaintiff's impairments.

Pl.'s Br. p. 1.

## III. DISCUSSION AND ANALYSIS

Both points ultimately challenge ALJ Crump's determination of plaintiff's "residual functional capacity." Such determination, a requirement for both Step 4 and Step 5 findings, essentially delineates what, if anything, an applicant can still do despite the applicant's limitations.[3]

## A. Failure to Consider All Impairments

A just and valid administrative determination requires at a minimum consideration of all alleged impairments. *See Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir.2000). The Commissioner acknowledges and embraces this rudimentary concept through an official regulation stating:

"[W]e will consider the combined effect of *all of your impairments* without regard to whether any such impairment, if considered separately, would be of sufficient severity [to be the basis of eligibility under the law]. If we do find a medically severe combination of impairments, *the combined impact of the im-*

---

from engaging in his regular previous employment. If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner.

5. The Commissioner determines whether other work exists in the national economy which the applicant can perform. If the Commissioner establishes that an applicant can perform alternative employment, the

burden shifts back to the applicant to show he cannot perform the alternative labor.

3. *See* 20 C.F.R. § 404.1545(a) (2006). When making a residual functional capacity determination, the Commissioner decides whether an applicant retains physical and mental abilities necessary to perform activities generally required by competitive, remunerative work. *See Id.;* Soc. Sec. R. 96–8p (1996), 1996 WL 374184.

*pairments will be considered throughout the disability determination process."*

20 C.F.R. § 404.1523 (2006) (italics added).

Impairments and their severity are determined at Step 2 of the sequential evaluation process described earlier. Should legal error occur at this early stage, it would impact the remainder of the analysis, and likely would impugn the overall evaluation. Plaintiff contends that such an infective error occurred here because ALJ Crump's decision makes no reference to consideration of two of plaintiff's alleged impairments, *viz., "uncontrolled hypertension"* and *"status post heart catheterization with coronary angiography and ventriculography as of April 23, 2003."* Pl.'s Br., p. 20.

 The record establishes unequivocally that plaintiff suffers from hypertension which requires intensive therapy for control. Tr. 217. Plaintiff reports numerous episodes of syncope (described by plaintiff as "fainting spells"),[4] which may represent a side effect of hypertensive medications.[5] Finally, the record suggests that plaintiff's hypertension is uncontrolled because he has not succeeded in losing weight or changing lifestyle. See Tr. 142, 149, 160, 180.

Plaintiff also alleged *"heart"* as limiting his ability to work (Tr. 79), and the record shows that he is under the care of a cardiologist, Dr. Pradip Morbia, M.D. Dr. Morbia performed a cardiac catheterization with coronary angiography in April, 2003, and discovered a coronary artery aneurysm. Tr. 157. Dr. Morbia also performed an abdominal aortogram with bilateral renal arteriogram in February, 2004. Tr. 216.

This point of error, therefore, is well-taken. The record reflects medical diseases or abnormalities that may constitute impairments. ALJ Crump clearly erred by failing to consider and evaluate them.

## B. Failure to Perform Function by Function Assessment

Plaintiff argues that ALJ Crump made a residual functional capacity determination without first addressing any of the strength demands set forth in 20 C.F.R. 404.1545, 416.945 and Social Security Ruling 96–8p. Pl.'s Br., p. 13. To guide and inform the process of determining residual functional capacity, the Commissioner directs adjudicators to consider seven ordinary physical functions. Those physical functions are:

1. Sitting
2. Standing
3. Walking
4. Lifting
5. Carrying
6. Pushing
7. Pulling

*See* 20 C.F.R. § 404.1545(b) (2006). Moreover, an implementing Ruling directs adjudicators to perform this *function-by-function assessment before* expressing residual functional capacity in terms of exertional levels of work. Soc. Sec. R. 96–8p, at *5.

 ALJ Crump found that plaintiff has residual functional capacity for "a significant range of light work" with specified limitations. Tr. 20. However, ALJ Crump did not incorporate a function-by-function assessment into his decision. ALJ Crump only recited strength demands for light work generally, and such recitation clearly

---

4. *See* Tr. 142, 143, 149, 150, 160.

5. Plaintiff's medications include Clonidine, Tarka, and Lipitor. Tr. 98. Syncope is a possible side effect of these medications. Physicians' Desk Reference 522, 875, 2498 (60th Ed.2006).

does not suffice as the type of individualized assessment required by Regulation 20 C.F.R. § 404.1545(b) and Social Security Ruling 96–8p.

Accordingly, this point of error also is well-taken. ALJ Crump made his residual functional capacity in disregard and violation of governing law.

## C. Effect of the Errors

██ Not every error warrants reversal or remand. Both errors identified above constitute violation or disregard of an internal policy ruling or an implementing regulation. Reversal and remand for failure to comply with a *ruling* is appropriate only when a complainant affirmatively demonstrates ensuant *prejudice. Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir.1981) (citing *Pacific Molasses Co. v. Fed. Trade Comm'r,* 356 F.2d 386 (1966)); *see also Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). Courts may not reverse and remand for failure to comply with a *regulation* without first considering whether the error was *harmless. See Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir.2003).

██ Prejudice and harmless error analysis, although different procedurally, are similar in substance. A claimant establishes prejudice by showing that adherence to the ruling might have led to a different decision. *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir.2000) (citing *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1995)) *(Ripley* ultimately citing *Kane v. Heckler,* 731 F.2d 1216 (5th Cir.1984)). Harmless error exists when it is inconceivable that a different administrative conclusion would

have been reached absent the error. *Frank v. Barnhart,* 326 F.3d at 622; *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) (error is harmless unless there is reason to think that remand might lead to a different result).

Whether ALJ Crump's errors were harmless, and whether plaintiff was prejudiced thereby are close questions in this case. On one hand, nothing in objective medical evidence indicates that any physician—treating, examining or evaluating—placed any limitation whatsoever on plaintiff's ability to perform work at any exertional level due to hypertension or heart disease. The lack of such evidence could lead a court to conclude that specific consideration of these impairments would not have produced a different decision. Similarly, no objective medical evidence contains a physician-imposed limitation that would preclude plaintiff from performing light work.[6] Therefore, a court could conclude that plaintiff was not prejudiced by the lack of a formal function-by-function assessment of the seven physical functions listed in 20 C.F.R. § 404.1545 and Social Security Ruling 96–8p, and that its omission was harmless error.

On the other hand, the record contains evidence of a coronary artery aneurysm, sycope and potentially uncontrolled hypertension. Common sense alone permits an inference that these additional impairments have at least some additional impact on plaintiff's residual functional capacity. Thus, a court might conclude that ALJ Crump's wholesale failure to consider them in accordance with the protocol spec-

---

**6.** "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.... [Light work] requires a good deal of walking or standing, or ... sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b) (2006).

ified by the Commissioner may have skewed the result.

 In this instance, the better course is to choose the latter option and remand the matter to the Commissioner for further consideration. Scales of justice tip in that direction because of the potentially injurious or even fatal synergy that may develop from the interaction of uncontrolled hypertension with an existing coronary artery aneurysm. The scales tip even further in that direction when there is evidence of functional capacity limiting side effects of medication. Neither the court, the Commissioner, nor ALJ Crump should force plaintiff to attempt work in order to subsist without first investigating whether these impairments, singly or in combination with others, significantly affect plaintiff's residual functional capacity for remunerative work. Remand is preferable because it will provide an opportunity for further development of objective medical evidence regarding possible functional effects, if any, of these additional detriments. *See Ripley*, 67 F.3d at 557 (remanded, based on lack of substantial evidence, to obtain medical opinion of functional limitations).

### IV. RECOMMENDATION

The Commissioner's decision should be reversed and this case remanded with instructions to consider all impairments; make a function-by-function assessment of plaintiff's residual functional capacity as required by Regulation 20 C.F.R. § 404.1545(b) and Social Security Ruling 96–8p; and reconsider plaintiff's application in light of any additional findings.

### V. OBJECTIONS

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objection to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendation contained in this report within 10 days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations.

Oct. 19, 2006.