**Wayne R. VEAL, Jr., Plaintiff**

v.

**SOCIAL SECURITY ADMINISTRATION, Commissioner.**

**No. 1:07–CV–901.**

United States District Court, E.D. Texas, Beaumont Division.

May 21, 2009.

Steven S. Packard, Packard Packard & LaPray, Lake Charles, LA, for Plaintiff.

Martin Wayne Long, Social Security Administration, Dallas, TX, for Defendant.

## *MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

THAD HEARTFIELD, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct, and the Report of the United States Magistrate Judge is **ADOPTED**. A Final Judgment will be entered separately, affirming the decision of the Commissioner and dismissing this action.

Report and Recommendation of United States Magistrate Judge

EARL S. HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1]

### I. Nature of the Case

■ This action requests judicial review of the Commissioner of Social Security Administration's decision denying plaintiff's application for disability-based benefits. While United States district courts may review such decisions (42 U.S.C. § 405 (2003)), Congress limits the scope of judicial review to determinations as to whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995); *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992). When proper principles of law were applied, and the Commissioner's decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. of New York v. N.L.R.B.,* 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also,* 42 U.S.C. § 405(g).

### II. Proceedings

Plaintiff applied for disability insurance benefits (DIB[2]). Plaintiff reported disability due to "mental problems/arthritis/uncontrolled blood sugar, diabetes, stress, right hand is numb, severe back problems." Tr. 158. After an initial administrative denial, plaintiff requested and received an evidentiary hearing before an administrative law judge (ALJ), Earl W. Crump.

---

1. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R. 1(H) for the Assignment of Duties to United States Magistrate Judges. *See also* General Order 05–06.

2. DIB, authorized by Title II of the Social Security Act and funded by Social Security taxes, provides income to workers who contribute premiums through federal Old Age, Survivors, and Disability Insurance payroll deductions or self-employment taxes, and who are subsequently forced by disability into involuntary, premature retirement. *See* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 136.1 (14th ed. 2001).

ALJ Crump developed a complete evidentiary record consisting of plaintiff's testimony, a medical expert's testimony, a psychological evaluation, two residual functional capacity assessments,[3] and plaintiff's medical treatment records. ALJ Crump also received testimony from a vocational expert (VE), Patricia Cowen. Responding to a hypothetical question posed by ALJ Crump, VE Cowen opined that a person whose residual functional capacity is the same as plaintiff's can still perform several jobs available in significant numbers' in the economy.

Based substantially on VE Cowen's testimony, ALJ Crump denied plaintiff's application. The Appeals Council denied plaintiff's request for review of ALJ Crump's decision. Plaintiff then timely filed the instant appeal in federal court.

### III. Administrative Determination

ALJ Crump concluded that plaintiff proved that he has the following impairments which, considered singly or in combination, meet the regulatory definition of "severe": *diabetes mellitus, bipolar disorder* and *substance abuse addiction disorder (drug)*.[4] Tr. 19, Finding 3. Nonetheless, ALJ Crump further concluded that plaintiff has residual functional capacity to perform the exertional demands of a wide range of light work, reduced or limited to: *no complex or detailed work (only 1–3 step repetitive operations); no more than incidental contact with the general public or co-workers; limited to a single supervisor; and, no work at a forced pace or an assembly line pace.* Tr. 19, Finding 7. When describing in his hypothetical question to VE Cowen plaintiff's inability to do more than unskilled work due to mental health, ALJ Crump stated:

> Further assume that I would find that this person would be precluded from performing complex or detailed work and limited cognitively to one to three step, repetitive operations … and [the individual] would be precluded from performing work at a forced pace or assembly line pace.

Tr. 650.

After factoring in all elements of the hypothetical question, including the limitation quoted above, VE Cowen testified that a person with such impairments, limitations and residual capacity for light work can perform jobs that exist in significant numbers in the national economy. Specifically, she testified that plaintiff can still perform most, if not all, of the light, unskilled jobs, and she gave specific examples of *packager, assembler* and *electronics worker.* Tr. 651. Relying on that testimony, ALJ Crump concluded that claimant is not disabled pursuant to the Social Security Act because he remains capable of engaging in substantial gainful employment.

### IV. Points of Error and Commissioner's Response

Plaintiff contends that ALJ Crump did not apply proper legal standards, and further argues that ALJ Crump's decision lacks substantial evidentiary support. Plaintiff articulates these errors as follows:

---

**3.** Two physicians, employed by the State Disability Determination Services, conducted residual functional capacity assessments of the plaintiff. Dr. Terry Collier, M.D., who specializes and is board certified in Internal Medicine conducted an assessment of plaintiff's alleged physical limitations. Tr. 552. Dr. Mehdi Sharifian, M.D., specializing in child psychiatry, performed an assessment of plaintiff's alleged mental limitations. Tr. 561.

**4.** An impairment is severe when its magnitude is sufficient to limit significantly an individual's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003).

"The Commissioner *failed to apply proper principles of law* because:

1. The ALJ failed to consider all of Plaintiff's impairments singularly and in combination.

The Commissioner's decision is *not supported by substantial evidence* because:

2. The vocational testimony, upon which the ALJ's decision is based, is facially unreliable as the reasoning skills and pace required by the jobs identified by the VE exceed the limitations contained in the hypothetical questions and in the RFC as determined by the ALJ.

3. The ALJ failed to elicit a reasonable explanation for the inconsistency between the VE testimony and the information contained in the DOT pursuant to Soc. Sec. R. 00–4p."

Pl.'s Br., p. 1 (italics added). Although articulated separately, plaintiff's brief acknowledges that the latter two points are "intertwined;" both hinge on an argued conflict between VE Cowen's testimony regarding jobs that a person with plaintiff's residual functional capacity can still perform and information in the *Dictionary of Occupational Titles (DOT)* as to the requirements for performing such jobs.

The Commissioner's brief defends ALJ Crump's decision as faithfully adhering to governing legal principles and as supported by substantial evidence at every crucial step. The Commissioner responds to the first point by arguing that ALJ Crump's decision affirmatively shows that he properly considered all evidence and the combined effects of plaintiff's impairments. Defs. Br. 3. Addressing plaintiff's remaining two points, the Commissioner argues that VE Cowen's testimony is spe-cific and reliable, and is not inconsistent with the *DOT*. Alternatively, even if there is an arguable or implicit conflict, the Commissioner contends that plaintiff waived the point by not cross-examining VE Cowen on the subject. Therefore, the Commissioner asserts that the court must affirm his decision.

## V. Consideration of Impairments

### A. Evidentiary Record

At the administrative evidentiary hearing, plaintiff testified that he experiences pain during bowel movements, and he attributed such pain to residual effects of two prior inguinal hernia surgeries. Plaintiff's medical records indicated the he had two hernia surgeries in 2003,[5] and nineteen months later, in February 2005, experienced bilateral groin pain. A physician's examination and a diagnostic CT scan revealed no abnormality of the abdomen and pelvis. Consequently, the diagnosis was a pulled groin muscle. Plaintiff did not seek or require further medical care for this condition, but states that he has residual pain during bowel movements.

### B. Competing Arguments

Plaintiff's brief correctly notes that ALJ Crump's decision does not mention or discuss plaintiff's hernias. Plaintiff further reckons that the failure to *mention* his hernias reflects that they were not *considered*. Plaintiff refers the court to regulations that require administrative adjudicators to consider and discuss all impairments, regardless of their severity, and to consider also the cumulative impact of all impairments. Finally, plaintiff hypothecates that if his hernias had been recognized, ALJ Crump might have concluded that plaintiff's residual functional capacity is limited to work at the lower,

---

**5.** Plaintiff underwent a right inguinal hernia surgery on July 14, 2003. Tr. 193. On July 19, 2003 he underwent "an open left inguinal hernia repair." Tr. 211.

sedentary exertional level, in which event he might have been found to be disabled.

The Commissioner's brief correctly notes that plaintiff's application for DIB benefits did not claim impairment due to hernias, and that there is no objective medical evidence demonstrating any lingering functional limitations or necessary medical treatment for residuals of prior hernia surgeries. The Commissioner also points to multiple passages in the ALJ Crump's decision indicating that he considered all of the evidence and that he considered all of plaintiff's impairments, both singly and in combination.

## C. Principles of Analysis

■ Social Security benefits based on disability are awarded only for "impairments," meaning abnormalities that can affect a person's ability to engage in substantial gainful activity. In addition, the abnormality must be such that it can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence, as opposed to a claimant's subjective statements or symptoms. 20 C.F.R. § 416.908 (2005). Mere notations of subjective complaints fall short of "medically acceptable clinical and laboratory diagnostic techniques" required to establish an impairment. 20 C.F.R. § 404.1508 (2005). Finally, to qualify for benefits, such impairments must render the claimant unable to engage in any substantial gainful activity for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a) (3)(A).

■ With this core concept in mind, it is axiomatic that the Commissioner must consider *all available evidence* relevant to an application for benefits under the Social Security Act. If not implicitly required under the Due Process Clause of the Constitution, it is explicitly required by the Commissioner's own regulations and internal policy rulings [6] and by governing circuit case law.[7] When the Commissioner fails to take into account all relevant evidence, a reviewing court deems the Commissioner's decision to be unsupported by substantial evidence.[8]

■ An additional requirement also imposed both by the Commissioner's regulation and by governing circuit law is that when considering applications for disability-based benefits, administrative law judges must consider the *combined effects* of all impairments without regard to whether any one impairment, if considered separately, would be of sufficient severity to be a basis for disability.[9] Failure to consider combined impact of multiple impairments constitutes a failure to apply correct principles of law.[10]

■ It is equally axiomatic, however, that failure to expressly *mention* a relevant item of evidence does not mean that it was not *considered*.[11] Further, nothing in

---

6. *See* 20 C.F.R. § 404.1520(a) (2005); Soc. Sec. Ruling 96–7p (1996).

7. *See Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir.2001).

8. *See Myers v. Apfel,* 238 F.3d at 621.

9. *See* 20 C.F.R. §§ 404.1523, 416.923 (2006); *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000), citing *Crowley v. Apfel,* 197 F.3d 194, 197 (5th Cir.1999); *Anthony v. Sullivan,* 954 F.2d 289, 293 (5th Cir.1992); *Sewell v. Heckler,* 764 F.2d 291, 294 (5th Cir.1985); *Davis v.*

*Heckler,* 748 F.2d 293, 296 (5th Cir.1984); *Estran v. Heckler,* 745 F.2d 340, 341 (5th Cir.1984).

10. *Loza v. Apfel,* 219 F.3d at 393, 399; *Owens v. Heckler,* 770 F.2d 1276, 1282 (5th Cir. 1985).

11. *Cf. Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 644 (5th Cir.1992) (court's failure to list each fact and argument raised by plaintiff does not mean that court did not consider each fact and argument).

the law requires the Commissioner to *accept* all evidence as credible, or to include some symptoms of impairments in a hypothetical question posed to a vocational expert witness when there is no evidence that such symptoms interfere with the claimant's ability to work.[12] Nor does the law require the Commissioner always to discuss evidence that was rejected.[13]

■■■ Finally, and of particular significance in this case, only *impairments* found to be *medically severe* (singly or in combination) need be considered throughout the disability determination.

> "*If the ALJ finds a medically severe combination of impairments,* 'the combined impact of the impairments will be considered throughout the disability determination process.' "

*Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000). The regulation expresses the same intellection as follows:

> "*If we do find a medically severe combination of impairments,* the combined impact of the impairments will be considered throughout the disability process."

Thus, only medically severe impairments are considered throughout. *A fortiori,* a condition that does not even meet the definition of impairment need not be considered beyond the point it is rejected. *Bornette v. Barnhart,* 466 F.Supp.2d 811, 814 (E.D.Tex.2006).

*D. Discussion and Application*

■■■ ALJ Crump stated that he conducted a careful consideration of the *entire record.* Tr. 18. He stated that he considered all *symptoms.* Tr. 19. He further stated that he evaluated the *combined effect* of plaintiff's impairments. Tr. 18. Finally, he acknowledged his duty to do so by citing the appropriate Regulation, 20 C.F.R. 404.1520. Clearly, ALJ Crump was aware of his legal duties, and can be presumed to have honored and accepted them. Nothing in his decision indicates that he intentionally ignored or rejected that duty.

But, as plaintiff argues, ALJ Crump did not expressly mention or discuss plaintiff's hernias. Does that mean that he erred? Under the principles articulated in the preceding section, there was error only if ALJ Crump (a) considered plaintiff's hernias to be impairments, and (b) determined such impairments, singly or in combination, were "severe" as that term is defined. [See note 4, supra.].

There was no error. Plaintiff's subjective testimony was insufficient to establish that the distant-past inguinal hernias, both successfully repaired by surgery, are present impairments. As the Commissioner properly points out, plaintiff did not even list his prior hernias as impairments on his application, and there is no objective medical evidence of any persistent physical abnormality related to them. ALJ Crump properly rejected the suggestion that residual effects of two hernias rose to the level of an impairment. He was not required to explain why; he was not required to discuss evidence that he rejected at the outset.

Second, and even if ALJ Crump were to have considered plaintiff's repaired hernias as an impairment, there was no basis whatsoever for him to have found that it, considered singly or in combination, amounted to a severe impairment, as that term is defined. There is no evidence

---

**12.** *See Jordan v. Heckler,* 835 F.2d 1314, 1316 (10th Cir.1987).

**13.** *Cf. Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir.1994) (declining to require ALJ to "discuss the evidence that was rejected" when evaluating the claimant's complaints of pain).

whatsoever, not even subjective testimony from plaintiff, that his hernias affect his ability to work or to do work-related activities. The only alleged effect was pain during bowel movements. Under that circumstance, ALJ Crump quite properly did not list hernias among the impairments he considered as being severe. Consequently, he was not required to consider or discuss it further, nor was he obligated to include it as a factor for VE Cowen to consider.

## VI. Conflict Between VE Testimony and Dictionary of Occupational Titles

Plaintiff's second and third points of error, argued together, are analyzed together. This section first provides generic descriptions of the roles that vocational experts and the *DOT* routinely play in the Commissioner's consideration of applications for disability benefits. Second, this section identifies the legal principles that come into consideration when vocational expert testimony conflicts with information printed in the *DOT*. Finally, this section applies those legal principles to this case wherein plaintiff argues that ALJ Crump did not identify and resolve a VE/*DOT* conflict.

### A. Vocational Experts and Dictionary of Occupational Titles

Administrative adjudicators of social security disability claims utilize a five-step, sequential evaluation process prescribed by regulation [14] and approved by courts [15] as a fair and just way for determining disability applications in conformity with the Social Security Act and as contributing to uniformity and efficiency in such determinations. When a decision can be made at an early step, remaining steps are not considered. When—as here—a decision is reached only at the last step (Step 5), it means that the claimant established a *prima facie* case of disability, and the burden then shifted to the Commissioner to show that other work exists in the national economy that the claimant can perform despite his or her impairments.[16]

Among the sources of evidence that the Commissioner consults to determine when presumptively-disabled claimants can perform alternative, available work are (1) vocational experts and (2) a United States Department of Labor publication titled the *Dictionary of Occupational Titles (DOT)*. Vocational experts assess whether jobs exist for a person with the claimant's precise abilities.[17] They also assist in determining complex issues, such as whether a claimant's work skills can be used in other work and the specific occupations in which they can be used.[18] In certain instances, courts even *require* that the Commissioner obtain expert vocational testimony or other similar evidence.[19]

The *DOT* and its supplement, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO )*, comprise a comprehensive listing of job titles in the United States, along with detailed descriptions of require-

14. 20 C.F.R. § 416.920 (2005).

15. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)).

16. *See Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir.2005) (citing *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir.2002); *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir.1995)).

17. *See e.g., Gilliam v. Califano*, 620 F.2d 691, 694 n. 1 (8th Cir.1980).

18. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e) (2005).

19. *See e.g., See Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir.1985); *Dellolio v. Heckler*, 705 F.2d 123, 127–28 (5th Cir.1983).

ments for each job, including assessments of exertional levels and reasoning abilities necessary for satisfactory performance of those jobs. The Commissioner recognizes the *DOT/SCO* publications as authoritative, and routinely relies on them "for information about the requirements of work in the national economy." Soc. Sec. R. 00–4p, 2000 WL 1898704, at *2.

*B. Conflicts*

Regulations clearly permit administrative law judges to rely on either source of information when determining whether claimants can make adjustments to alternative available work. *See* 20 C.F.R. § 404.1566(d), (e) (2005). It is, therefore, foreseeable (if not inevitable) that in some cases a vocational expert's opinion may, as to a particular claimant's ability to perform alternative work, conflict with the *DOT's* explication of the requirements for particular jobs. Such conflicts, while relatively rare, occur frequently enough that various federal trial and appellate courts throughout the nation have grappled with how to resolve such conflicts. Moreover, the Commissioner has issued an interpretive ruling on the subject. *See* Soc. Sec. R. 00–4p, 2000 WL 1898704, at *2.

 Under governing circuit law, an administrative law judge may *in appropriate cases* give greater weight to expert vocational testimony than to findings in the *DOT*. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir.2000). One obvious reason is that the *DOT* provides only *standardized* job information, whereas a vocational expert's testimony is tailored to an *individual* claimant's work skills as contained in an administrative law judge's hypothetical question. But neither source automatically trumps the other, and neither regulation nor case law ranks one source above the other. Thus, each source initially has

equal dignity and effect. *Romine v. Barnhart*, 454 F.Supp.2d 623 (E.D.Tex.2006).

 An administrative law judge's discretion to choose between conflicting evidence is not unfettered, however. In *Carey v. Apfel*, the Fifth Circuit embraced what it called a "middle ground." When a *direct and obvious* conflict exists, and the administrative law judge fails to explain or resolve the conflict, the probative value of the vocational expert's testimony is so lessened that a reversal and remand for lack of substantial evidence usually follows. But when the conflict is *tangential, implied or indirect*, and it did not undergo adversarial development at the administrative hearing, the vocational expert's testimony may be accepted and relied upon by the administrative law judge without resolving the later-proffered conflict provided the record reflects an adequate basis for doing so. *Carey v. Apfel*, 230 F.3d at 146.

The Commissioner's policy for addressing and resolving conflicts between expert vocational testimony and *DOT* information does not differentiate between obvious and implicit conflicts. Rather, the Commissioner directs that in *all* cases *"the adjudicator has an affirmative responsibility to ask about any possible conflict between ... VE ... evidence and information provided in the DOT."* Soc. Sec. R. 00–4p, 2000 WL 1898704, at *4. Further, the Ruling mandates:

> [B]efore relying on VE ... evidence to support a disability determination or decision, [the ALJ] must: Identify and obtain a reasonable explanation for any conflicts ... and Explain ... how any conflict ... was resolved.

*Id.*, at *1.

*C. The Competing Arguments*

1. *Plaintiff*

Plaintiff argues that there is a direct and obvious conflict between VE Cowen's

testimony and information contained in the *DOT*. As noted earlier, the *DOT* identifies not only *exertional* requirements for each listed job, but also the *reasoning abilities* necessary for satisfactory performance of the work. The *DOT* categorizes reasoning ability levels from 1 to 6. Plaintiff argues that under ALJ Crump's explicit finding, he is "precluded from performing complex or detailed work and limited cognitively to one to three step, repetitive operations" (limitations posited by ALJ Crump in his hypothetical question to VE Cowen). Such limitation corresponds almost exactly with the *DOT's* articulation of reasoning ability level 1.[20] VE Cowen, however, opined that plaintiff can still perform work as a packager and electronics worker, jobs which, according to the DOT, require a reasoning ability level of 2.[21] Thus, as to these two jobs, plaintiff perceives a conflict with the *DOT's* job requirement information and VE Cowen's testimony.

Plaintiff perceives an additional conflict regarding all three jobs that VE Cowen testified that plaintiff can still perform. The *DOT's* supplement, the *SCO*, lists "worker characteristics" for each job catalogued in the *DOT*.[22] In that publication, a job identified with the letter "R" denotes it as one involving "performing repetitive or short-cycle work." The *SCO* refers to but does not incorporate by reference another Department of Labor publication, the *1991 Revised Handbook for Analyzing Jobs (RHAJ)* which identifies various factors important to adjustments workers must make for successful job performance.[23] Included is a factor designated as "Temperaments" which, in turn, consists of eleven separately-identified components reprinted below in the note.[24] One of these, is an "R" factor, which, like the *SCO*, denotes "repetitive or short-cycle" work. The "R" factor is defined as follows:

> "performing a few routine and uninvolved tasks over and over again accord-

---

**20.** "Apply commonsense understanding to carry out simply one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Dictionary of Occupational Titles*, Vol. II, App. C § III.

**21.** "Apply commonsense understanding to carry out detailed by uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, Vol. II, App. C § III.

**22.** "Worker Characteristics are job analysis components which reflect worker attributes that contribute" to successful job performance. *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, 1993, viii.

**23.** According to its introduction, the *RHAJ* "contains the methodology and benchmarks used by the cooperative Federal–State Occupational Analysis Program in gathering and recording information about jobs. Major Occupational Analysis products include the *Dictionary of Occupational Titles (DOT)* which

contains occupational definitions of some 13,-000 occupations, *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles (SCO)*, and the *Guide for Occupational Explorations*."

**24.** "The 11 Temperament factors identified for use in job analysis are:

D—DIRECTING, Controlling, or planning activities of others.
R—Performing REPETITIVE or short-cycle work.
I—INFLUENCING people in their opinions, attitudes, and judgments.
V—Performing a VARIETY of duties.
E—EXPRESSING personal feelings.
A—Working ALONE or apart in physical isolation from others.
S—Performing effectively under STRESS.
T—Attaining precise set limits, TOLERANCES, and standards.
U—Working UNDER specific instructions.
P—Dealing with PEOPLE.
J—Making JUDGMENTS and decisions."
U.S. Dep't of Labor, Revised Handbook for Analyzing Jobs 10–1 (1991).

ing to set procedures, sequence, or pace with little opportunity for diversion or interruption. Interaction with people is included when it is routine, continual, or prescribed."

U.S. Dep't of Labor, *Revised Handbook for Analyzing Jobs 10–2* (1991).

Plaintiff, relying on the *RHAJ* definition, argues that a job with a temperaments factor "R" necessarily connotes work done at a forced or assembly-line pace, and requires fast, frequent or constant reaching and handling. Plaintiff argues, that all three jobs identified by VE Cowen, viz., packager, assembler, and electronics worker, carry the worker trait characteristic "R" designation in the *SCO*. Plaintiff concludes that there is a conflict between VE Cowen's testimony and information in the *DOT/SCO/RHAJ* trilogy because ALJ Crump expressly limited plaintiff's residual functional capacity by *excluding* "work at a forced pace or an assembly line pace."

Considered collectively, the proffered reasoning ability conflicts and the proffered temperament conflicts impugn VE Cowen's testimony with respect to all three jobs that VE Cowen testified the plaintiff can still perform. Yet, ALJ Crump did not identify those conflicts or explain how he resolved them. Plaintiff suggests, therefore, that the case should be reversed and remanded.

### 2. *Commissioner's Response*

The Commissioner's principal response is that plaintiff waived his conflict argument by not developing it through adversarial cross examination of VE Cowen during the administrative hearing before ALJ Crump. The Commissioner relies on *Car-*

*ey v. Apfel,* discussed above in Section VI., B.

Second, the Commissioner's brief argues that if there were a conflict as posited by plaintiff, ALJ Crump was entitled, nevertheless, to rely on VE Cowen's testimony in preference to the *DOT.* The Commissioner relies on familiar case law characterizing the *DOT* as providing only general, generic and approximate information that focuses on the *maximum* requirements for various jobs instead of a range, whereas vocational experts are familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.[25] Relying again on *Carey v. Apfel,* the Commissioner suggests that when there is a conflict, it is "greatly mitigated by the vocational expert's specific testimony." Finally, the Commissioner argues when there is a direct or implied conflict between the *DOT* and the vocational expert's testimony, an ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so.

The Commissioner's brief does not address plaintiff's point that before relying on conflicting vocational expert testimony, Social Security Ruling 00–4p required ALJ Crump to (1) identify and obtain a reasonable explanation for any conflicts, and (2) explain how the conflict was resolved.

### D. *Discussion and Application*

 ALJ Crump clearly complied with his Soc. Sec. R. 00–4p duty to inquire as to whether VE Cowen's opinion conflicted with relevant *DOT* information. Tr. 23, 652. VE Cowen testified there is no conflict with the *DOT* regarding the jobs she considers to be within the range of plain-

---

**25.** *Carey v. Apfel,* 230 F.3d at 145 (*citing Fields v. Bowen,* 805 F.2d 1168, 1170 (5th Cir.1986)); *Vaughan v. Shalala,* 58 F.3d 129 (5th Cir.1995); *see also Wheeler v. Apfel,* 224 F.3d 891, 897 (8th Cir.2000).

tiff's residual functional capacity. No conflict was suggested during her cross-examination. Thus, nothing at the hearing triggered any reason for ALJ Crump to "obtain a reasonable explanation" for and explain his resolution of conflicts. ALJ Crump's decision contains no apparent error.

If, however, the reasoning level and temperaments conflicts advocated by plaintiff were "direct and obvious," ALJ Crump should have recognized them *sua sponte* notwithstanding VE Cowen's disavowal and plaintiff's silence on the subject at the administrative evidentiary hearing. This "direct and obvious" question was considered recently in an almost identical case, identified here as *Gaspard*.[26] The claimant there, like the plaintiff here, had residual functional capacity limitations that confined him to unskilled work involving simple one or two-step tasks on a repetitive basis. (Plaintiff here is limited to unskilled work involving one to *three*-step repetitive operations.) Similarly, the claimant in *Gaspard* was argued to be precluded from working at a forced or assembly-line pace, work which ALJ Crump expressly found plaintiff in this case unable to perform. And, in *Gaspard*, as here, a vocational expert testified that the claimant could still perform jobs that the *DOT/SCO/RHAJ* publications indicated have higher reasoning levels than "1"[27] and a temperaments factor of "R."[28]

After considering the issue, the court complimented claimant's argument, refer-

ring to it as "well-crafted," containing "elements of brilliance" and as bordering on "ingenious." Nonetheless, for reasons stated in detail there and summarized succinctly below, the court concluded that the conflicts, if any, were not direct and obvious. Consequently, the argument was waived for judicial review since it had not been developed at the administrative level through adversarial cross-examination of the vocational expert witness.

First, the court determined that the proffered conflicts themselves were debatable. The suggested temperaments factor conflict was premised on a "R" factor definition contained in the *RHAJ*, which the Commissioner has not recognized as authoritative, which is nowhere mentioned in the *DOT*, and whose only connection to the *DOT* is a passing reference in the *DOT* supplement and companion publication, the *SCO*.[29] As such, any inconsistency was tangential or implicit at best. It was not direct and obvious.

Similarly, the reasoning level conflict, while arguable, was not ineluctable. A limitation of simple, one or two-step tasks on a repetitive basis does not *necessarily* preclude one's ability to perform jobs with reasoning level 2 or higher. The Commissioner argued there, as VE Cowen testified here, that much unskilled work carrying a reasoning level higher than 1 *can* be performed by persons who are limited to doing one to two-step (or three-step) repetitive operations.[30]

---

**26.** *Gaspard v. Social Security Admin. Com'r,* 609 F.Supp.2d 607 (E.D.Tex.2009).

**27.** See note 20, *supra.*

**28.** See note 24, *supra,* and *RHAJ* of the "R" factor, page 610, *supra.*

**29.** The *SCO* states that the *"Handbook for Analyzing Jobs",* 1991 contains additional information about components of occupational

analysis used by the U.S. Department of Labor." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,* 1993, App. ID.

**30.** "Unskilled work is work which needs little or no judgment to do *simple duties* that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a) (2004) (emphasis added).

Plaintiff here supports his reasoning level argument by citing an Eighth Circuit case, *Lucy v. Chater*, 113 F.3d 905 (8th Cir.1997), wherein a claimant's borderline intellectual functioning produced a residual functional capacity of ability to follow only simple instructions. That court remarked that *many* jobs in the unskilled category carry reasoning levels of 2 or higher, and therefore require more than mental capacity to follow simple instructions. *Id.,* at 909. This case lends support to plaintiff's argument, and since it was not argued or considered in *Gaspard,* the court should reexamine the issue.

After further review, *Lucy v. Chater* does not alter the balance of the equation. First, *Lucy v. Chater* considered an issue distinctly different than the one at issue here.[31] More importantly, it and *Gaspard* are, at bottom, consistent. *Lucy v. Chater* states that *many* (not *all* ) unskilled jobs with reasoning level 2 or higher require greater mental capacity than the ability to only follow simple instructions. *Gaspard* also rejected the notion that "unskilled work" generally trumps all specific *DOT* reasoning levels. Further, *Gaspard* acknowledged that *some* jobs requiring reasoning level two or higher might well conflict with the plaintiff's limitations. But neither case makes a blanket assertion that the *entire range* of unskilled jobs with reasoning level 2 or higher can or cannot be performed by a person with plaintiff's limitations. Indeed, several cases either

hold or intimate that a limitation to simple and repetitive tasks is *consistent* with a reasoning level of 2.[32]

Ultimately, vocational expert testimony that a person whose capacity is limited to performing simple, one to three-step, repetitive tasks can perform jobs with *DOT* reasoning levels 2 or higher may or may not conflict with the *DOT*. This uncertainty both underscores and validates the Fifth Circuit's "middle ground" rule which requires that *possible* conflicts be developed at the administrative level through adversarial cross-examination of the vocational expert witness.

Such rule does not impose an unworkable or too-onerous burden on claimants. To be sure, claimants hear for the first time at the administrative hearing the specific jobs that vocational experts believe they can still perform with their limitations. Claimants and their representatives cannot be presumed to know instantly the precise reasoning levels and temperaments factors applicable to those jobs. However, claimants have the opportunity to cross examine vocational experts, and they can test an expert's opinion that there is no conflict with the *DOT* by routinely asking them to recite for the record the reasoning abilities and worker trait characteristics that the *DOT* attributes to each job that the vocational expert testifies that a hypothetical person with the same limitations as the claimant can still perform. If any

---

**31.** In *Lucy v. Chater,* the issue was whether the Commissioner's decision lacked substantial evidentiary support when the administrative law judge applied Medical–Vocational Guidelines to direct a conclusion of disability without consulting a vocational expert to assess the claimant's residual functional capacity in light of significant nonexertional impairments (borderline intellectual functioning).

**32.** *See, e.g., Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir.2005) (holding that reasoning level two "appears more consistent

with" limitation of "simple and routine work tasks"); *Money v. Barnhart,* 91 Fed.Appx. 210, 215 (3d Cir.2004) (holding that "[w]orking at reasoning level 2 would not contradict the mandate that [plaintiff's] work be simple, routine and repetitive"); *Riggs v. Astrue,* 2008 U.S.Dist.LEXIS 92922, 2008 WL 1927337 (W.D.Wash. Mar. 31, 2008); *Meissl v. Barnhart,* 403 F.Supp.2d 981 (C.D.Cal.2005); *Flaherty v. Halter,* 182 F.Supp.2d 824 (D.Minn.2001).

of the *DOT* job requirements appear contrary to the limitations posited by the administrative law judge's hypothetical question, claimants can then develop their points through cross-examination.

By following this procedure, at least three salutary things will happen. First, vocational experts will be required to quality-check their initial opinions. This could result in a favorable change for claimants. Second, adversarial cross examination of vocational witnesses at evidentiary hearings will compel administrative law judges to identify and resolve the suggested conflicts in their written decisions. Again, this could result in a more favorable outcome for claimants. Third, the point will be preserved for later judicial review.

### VII. Conclusion and Recommendation

Plaintiff's point of error that the Commissioner failed to apply proper principles of law by not considering all impairments in combination lacks merit. Plaintiff's points of error based on an arguable conflict between vocational expert testimony and information in the *Dictionary of Occupational Titles* were waived for purposes of judicial review. Accordingly, the Commissioner's decision should be affirmed.

### VIII. Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to de novo review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

SIGNED this 22nd day of April, 2009.